18 P.3d 923

**STATE of Hawai'i, Plaintiff–Appellee,**

**v.**

**Ivy WEST, Defendant–Appellant.**

**No. 22337.**

Intermediate Court of Appeals of Hawai'i.

Oct. 2, 2000.

Certiorari Granted Nov. 8, 2000.

**62**

Ivy West, on the briefs, defendant-appellant, *pro se.*

Caroline M. Mee, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

BURNS, C.J., WATANABE, and LIM, JJ.

Opinion of the Court by WATANABE, J.

In this appeal, Defendant–Appellant Ivy West (West) challenges the January 5, 1999 Judgment of the District Court of the First Circuit, Honolulu Division (the district court), as amended upon reconsideration on January 29, 1999, which determined that she committed the traffic infraction of "noncompliance with speed limit prohibited" (speeding), in violation of Hawai'i Revised Statutes (HRS) § 291C–102 (1993).[1]

West argues that: (1) she was improperly charged; (2) Plaintiff–Appellee State of Hawai'i (the State) failed to properly establish whether the road she was traveling on was a state or county road and that the maximum speed limit on the road had been established in one of the two ways specified by HRS § 291C–102; and (3) the district court improperly failed to enter findings of fact (FsOF) upon its denial of West's many pre-trial and post-trial motions.

We reverse.

## BACKGROUND

On July 20, 1998, Officer Mark Kutsy (Officer Kutsy) stopped West and issued her a "Complaint and Summons" (the Complaint), notifying her that she had driven her vehicle on Lunalilo Home Road at a speed of 51 miles per hour (mph), in excess of the 30 mph posted speed limit, in violation of "HRS § 291C–102."

---

1. Hawai'i Revised Statutes (HRS) § 291C–102 (1993) states as follows:

**Noncompliance with speed limit prohibited.** (a) No person shall drive a vehicle at a speed greater than a maximum speed limit and no person shall drive a motor vehicle at a speed less than a minimum speed limit established by county ordinance.

(b) The director of transportation with respect to highways under the director's jurisdiction may place signs establishing maximum speed limits or minimum speed limits. Such signs shall be official signs and no person shall drive a vehicle at a speed greater than a maximum speed limit and no person shall drive a motor vehicle at a speed less than a minimum speed limit stated on such signs.

A violation of HRS § 291C–102 is a civil traffic infraction and not a criminal offense. See HRS §§ 291D–2 (1993) [2] and 291D–3(a) (1993). [3] The procedural requirements governing the adjudication of traffic infractions are set forth in HRS chapter 291D (1993 & Supp.1999), as well as the Hawai'i Civil Traffic Rules (HCTR) promulgated by the Hawai'i Supreme Court pursuant to HRS § 291D–14 (1993). [4] At the time West was cited for speeding, HRS § 291D–6 (1993) allowed her fifteen days to choose one of three options: (1) admit to the commission of the infraction and pay the fine indicated on the Complaint; (2) admit to the infraction and request a hearing to present mitigating factors; and (3) request an informal hearing to contest the Complaint.

The record on appeal indicates that West chose the third option and was afforded an informal hearing. When she was unsuccessful in overturning the Complaint, she requested and was given a trial *de novo* before the district court, pursuant to HRS § 291D–13 (1993 & Supp.1999).

## THE TRIAL *DE NOVO*

Prior to trial, West filed seventeen motions, objections, and pleadings. The arguments raised by West in these motions, requests, and pleadings can essentially be summarized as follows:

1. The Complaint against West was deficient because it failed to specify whether she was being charged with speeding on a county road or street, in violation of HRS § 291C–102(a), or speeding on a state highway or street, in violation of HRS § 291C–102(b); therefore, either the State should be required to particularize its charge against her so she can prepare her defense, or the charge should be dismissed;

2. The Complaint against West was not based on probable cause and therefore, should be quashed;

3. The State may not amend the Complaint just before trial to specify whether West is being charged with violating subsection (a) or (b) of HRS § 291C–102 because such an amendment would prejudice her substantial rights;

4. The schedule of maximum speed limits on file with the district court was not duly adopted and promulgated pursuant to HRS chapter 91, the Hawai'i Administrative Procedures Act, and is therefore not a "law" which West can be charged with violating;

5. The State will not be able to establish that Lunalilo Home Road is a state highway and that the speed limit signs on said road were official traffic control devices placed there by the state director of transportation;

6. The State will not offer into evidence the county ordinance establishing the speed limits on Lunalilo Home Road, a necessary element to prove a violation of HRS § 291C–102(a), and the district court should not take judicial notice of the ordinance, speed schedules, or official nature of the speed limit signs on Lunalilo Home Road without proper foundation being established;

7. If the district court denies any of West's pre-trial motions, it must enter FsOF and conclusions of law (CsOL) as to its reasoning.

Prior to the commencement of the trial *de novo* on January 5, 1999, the district court orally addressed West's pre-trial motions.

**2.** HRS § 291D–2 (1993) defines "traffic infraction" to mean "all violations of statutes, ordinances, or rules relating to traffic movement and control, including parking, standing, equipment, and pedestrian offenses, for which the prescribed penalties do not include imprisonment." A violation of HRS § 291C–102 relates to traffic movement, and at the time Defendant–Appellant Ivy West (West) was cited for violating HRS § 291C–102 (1993), as well as now, the penalties for violating HRS § 291C–102 did not include imprisonment. *See* HRS § 291C–161 (1993 & Supp.1998, 1999).

**3.** HRS § 291D–3(a) (1993) provides, in relevant part, that "[t]raffic infractions shall not be classified as criminal offenses."

**4.** HRS § 291D–14(a) (1993) states, in relevant part, that "[t]he supreme court may adopt rules of procedure for the conduct of all proceedings pursuant to this chapter."

The district court denied those motions that sought dismissal, particularization, or quashing of the Complaint, as well as the motion to compel Lieutenant Governor Mazie Hirono to testify at trial. The district court held that it would hear West's motions that requested evidentiary rulings "contemporaneously with the trial[.]" As to the remaining motions which were directed at the merits of the charge against West, the district court reserved ruling on the motions until the conclusion of the trial.

The deputy prosecuting attorney (DPA) for the State then orally charged West as follows:

> [DPA]: ... [O]n or about July 20, 1998, in the City and County of Honolulu, State of Hawaii, you did drive a vehicle at a speed greater than the maximum speed limit established by county ordinance or stated on signs placed by the director of transportation with respect to highways under the director's jurisdiction by traveling at a speed of 51 miles per hour in a 30 mile per hour zone, thereby violating Section 291C–102 subsection (a) of the [HRS]. Do you understand these charges?
>
> [WEST]: I don't understand them, but I hear you. On the record, I hear what you're saying. Not guilty.

The following colloquy between West and the district court then ensued.

> THE COURT: Is there a specific thing about the charge that you don't understand, [West]?
>
> [WEST]: Yeah, I don't understand how [the State] can charge me with a law that doesn't exist. According to the lieutenant governor's, which I subpoenaed so she could bring in the evidence that I requested for my case here—
>
> THE COURT: Wait, what specifically do you not understand? Is that what it is that you don't understand—
>
> [WEST]: I don't understand how [the State] can keep charging people with speeding on highways, that the speeding signs are only inventory lists and not law, not mandated into law.
>
> THE COURT: Okay, if that's your objection, the [c]ourt will enter a plea of not guilty on behalf of [West]. You may proceed.

Over West's objection, the State then called Officer Kutsy to the witness stand. Officer Kutsy testified that on July 20, 1998, he was on patrol, armed with an LTI–2020 laser speed gun in working condition. While parked in the driveway of Kaiser High School on Lunalilo Home Road, he pointed the laser gun at the license plate of West's car and the gun showed a readout of fifty-one miles per hour. Officer Kutsy testified that at the time he "shot [West's] vehicle with the LTI–2020 laser speed gun which was approximately, which was 1,077 feet, the closest speed limit sign that [West] had passed was approximately 13 hundred feet." Officer Kutsy was then questioned about his familiarity "with the City and County of Honolulu or State of Hawaii traffic control devices[,]" and West objected that Officer Kutsy was "not certified in that area." After the district court overruled West's objection, Officer Kutsy testified that he was familiar with the traffic control devices "[t]hrough training and patrol[,]" had seen similar signs before, and that the signs were "official City and County of Honolulu or State of Hawaii traffic control signs[.]" Officer Kutsy also testified that the speed limit indicated on the signs on Lunalilo Home Road was thirty miles an hour.

The DPA then asked the district court to take judicial notice of the speed schedule on file with the district court and the city and county ordinances with respect to the schedule. Over West's objection, the district court took judicial notice of the speed schedule and city and county ordinances.

Following further examination and cross-examination of Officer Kutsy, the State rested. The district court then proceeded to rule on West's pre-trial motions that it had earlier decided to hear concurrently with the trial.

> THE COURT: Okay, [West], notice of pretrial objections based on lack of evidence submitted at trial, okay. This being on notice, the [c]ourt will direct that that—
>
> [WEST]: Which motion are you on, your Honor. Which motion?

THE COURT: Notice of pretrial objections based on lack of evidence. This [c]ourt, this notice will be received and placed on file.

. . . .

THE COURT: [West's] motion to suppress evidence made, that motion is hereby denied. Notice of intent to call as material witness for [West] at trial[, DPA]. The notice is hereby received and placed on file.

Objection to trial court's taking judicial notice of the speed schedule and speed signs on the highway, okay. That objection has previously been overruled. The [c]ourt so notes that that objection is hereby overruled.

[West's] request to take judicial notice of certain provisions in the [HRS]. This motion is granted. The [c]ourt has taken judicial notice of certain provision[s] of the city and county ordinances.

[West's] motion to compel [the State] to enter into evidence statutory provision, statutory provision pursuant to HRS [§§] 264–2 and 701–114(c) that establishes jurisdiction where [West] was cited for HRS [§] 291C–102 or in the alternative, motion for dismiss, motion to dismiss for failure of the State to provide proof of jurisdiction. And this motion is, [c]ourt will take it as a motion to dismiss for failure to provide proof of jurisdiction, and that motion is hereby denied.

Motion to quash traffic citations/summons pursuant to Hawaii Rules of Penal Procedure [ (HRPP) ], and there being no grounds to quash the citation, that motion is hereby denied, okay.

And the last two remaining: [West's] motion to dismiss on the ground that [Officer Kutsy] lack[ed] specific articuable [sic] facts of reasonable suspicion to seize [West] in violation of 4th and 14th, [c]ourt hereby finds that [Officer Kutsy] was on duty, that he had an LTI–2020 laser that was operational, and that based on his use of said laser gun that [Officer Kutsy] had specific and articuable [sic] facts to seize

[West]. Court finds no violation of [West's] 4th and 14th Amendment rights.

And the last one, [West's] motion for judgment of acquittal, [c]ourt finds that there is sufficient credible evidence to continue, and that the State has met its burden at this point in time, and that motion for judgment of acquittal is hereby denied.

Following the district court's ruling, West declined to put on a case.

The district court then found West guilty as charged, stating as follows:

The [c]ourt finds as follows: that on July 20, 1998, at approximately 2:50 p.m., or 1450 hours of that day, Officer Kutsy was duly employed as an officer of the Honolulu Police Department; and that on that day he was on duty in the area of Lunalilo Home Road in Hawaii Kai which, which places within the jurisdiction of the City and County of Honolulu, State of Hawaii.

That at that spot on Lunalilo Home Road in Honolulu, City and County of Honolulu, the, Officer Kutsy saw [West] driving a car proceeding mauka [5] on Lunalilo Home Road; that through the employment of the LTI–2020 laser gun, [Officer Kutsy] detected [West's] automobile speed as 51 miles per hour.

The [c]ourt finds that [Officer Kutsy] was certified in the use of the LTI–2020 laser gun; that he had received instruction in the use of the laser gun; and that prior to, prior to using it in conjunction with [West's] car, he had previously tested the laser gun, and that the laser gun had tested to be working, to be fully operational.

The [c]ourt finds that there were speed signs posted on Lunalilo Home Road; that one speed sign in particular was about 130(sic) feet prior to the time that [Officer Kutsy], that [West] passed such a speed sign by a distance of about 130(sic) feet prior to [Officer Kutsy] lasering [West's] license plate.

The [c]ourt finds that the weather conditions were clear and unobstructed, and

---

**5.** "Mauka" is a Hawaiian word meaning "inland." M. Pukui & S. Elbert, *Hawaiian Dictionary* at 242 (1986).

that [Officer Kutsy] lasered [West's] vehicle's license plate from a distance of 1,077 feet; that [West] was going 51 miles per hour.

I, therefore, find that [West] beyond a reasonable doubt was in violation of [HRS § ] 291C–102 inasmuch as she was traveling at a speed of 51 miles per hour, whereas the official sign posted limited the traffic to a speed of 31 [sic] miles an hour. Based on the foregoing, I find you guilty as charged.

The district court subsequently found that West "was argumentative throughout the course of the trial" and had "filed a number of harassing-type of motions prior to the . . . start of the trial, and for that reason, the [c]ourt will impose a fine of $200 plus the $7 Driver Education Assessment." Informed by West that she would be filing an appeal, the district court then stayed execution of the sentence pending the appeal.

### THE POST–TRIAL MOTIONS

After trial, West filed the following motions: (1) "[West's] Hearing Motion for Reconsideration of Denial of Motion for Judgment of Acquittal at Trial on January 5, 1999" (Motion for Reconsideration); (2) "[West's] Hearing Motion for New Trial Pursuant to [HRPP] Rule 33" (Motion for New Trial); (3) "[West's] Petition to Vacate the Judgment and Sentence Entered January 5, 1999 Pursuant to [HRPP] Rule 40, the Eighth Amendment to the United States Constitution and the Hawaii Constitution" (Rule 40 Motion); (4) "[West's] Hearing Motion in Arrest of Judgment Pursuant to [HRPP Rule 34]" (Rule 34 Motion); and (5) "[West's] Ex Parte Motion for Leave to Proceed on Appeal *In Forma Pauperis.*" [6]

On January 29, 1999, the trial court held a hearing on West's post-trial motions. As to the Motion for New Trial, West argued that the district court "committed reversible error in denying [her] motion to dismiss without stating the essential [FsOF] on the record" and "mov[ed] for [FsOF] and [CsOL.]" The district court ruled as follows:

THE COURT: Okay. The [c]ourt believes that it's—in its decision on the merits of this case that it stated the [FsOF] and [CsOL]. And, if you disagree with the [c]ourt on that point, I think that—you know, that it's for an appellate court to decide. So, that . . .

[WEST]: Your Honor, the State didn't enter any evidence though, Your Honor.

THE COURT: I believe that there was a police officer that testified in this case and that there—there was substantial evidence to justify the verdict. So, that Motion . . .

[WEST]: Your Honor, . . .

THE COURT: . . . for New Trial is hereby denied. Okay. Next one.

With respect to West's Motion for Reconsideration, the following colloquy took place:

THE COURT: Okay. The [c]ourt finds that based on the—the testimony of [Officer Kutsy] that there was substantial evidence to find that—well, the evidence was certainly substantial enough to withstand a judgment of acquittal. The—the State had proven at the end—end of its case before it rested—at the—in—with—it—State had proven in its case each and every element of the offense and, what do you call, the—I—the [c]ourt believes that the denial of the motion for judgment of acquittal was correct.

[WEST]: But, Your Honor, the State allowed [Officer Kutsy] to testify for the—for the State instead of the State presenting evidence and laying a foundation. And, according to the Rules, [Officer Kutsy] can't—he doesn't control the traffic control device. He—in *State v. Knoppel* [sic], okay, I'm sorry, [Officer Kutsy] can't testify. According to [HRPP Rule 34] my due processes were denied.

THE COURT: If that's true, then we'd never get anybody convicted of any traffic offenses . . .

[WEST]: Well, Your Honor, you have to go by the Rules of the Court and by the law.

---

6. An "Order Denying Respondent's Motion for Leave to Proceed on Appeal *In Forma Pauperis*" that is signed by a district court judge is included in the record on appeal. However, the order is not dated and does not have a date-and-time-of-filing stamp.

THE COURT: Okay.

[WEST]: [Officer Kutsy] cannot testify for the State. The State has to lay a foundation, present the evidence. The State entered no evidence. I asked for [CsOL] and [FsOF], and I'm asking them—for them orally today on the record.

THE COURT: Okay.

. . . .

The [c]ourt will find that, what do you call, the—the State was entirely proper in having [Officer Kutsy] testify and he presented evidence, which was evidence beyond a . . .

The district court then asked West what her grounds were for her Rule 34 Motion. West responded that "the initial charge does not state or charge an offense" and the "trial court has committed reversible error in denying [her] motion to dismiss without stating [its] essential [FsOF] and [COL] on the record." The following discussion subsequently ensued:

[WEST]: The initial charge by [Officer Kutsy], Your Honor, on the ticket failed to charge me with (a) or (b), okay, required for the complaint to state an offense. Okay. [West]—I gave the State a second bite at the apple at trial. Okay? I filed a motion for a Bill of Particulars, which was denied. And, I demanded that the State charge me with (a) or (b). And, according to [HRPP Rule 34], it states, the [c]ourt on motion of a defendant shall arrest judgment if the charge does not allege an offense. The charge did not allege an offense.

THE COURT: Okay. We disagree on that. The [c]ourt finds that the charge did allege an offense.

[WEST]: When?

THE COURT: So, that—that is an offense under [HRS § 291C–102] and I will . . .

[WEST]: I have to know if I'm being charged with [ (a) ] or [ (b) ] so I know how to defend myself. One is for the state highway and the other is for municipal. You can't just generally charge them with—I mean, it—there are different jurisdictions here in the [c]ourt.

THE COURT: That is not a general charge. The charge was speeding. And, . . .

. . . .

[WEST]: And, it says here that according to [HRPP Rule 7(d) ], it states in relevancy a complaint shall be signed by the Prosecutor or it shall be sworn to or affirmed in writing before the Prosecutor by the complaining witness, and signed by the Prosecutor, except that a complaint alleged by a traffic offense may be sworn to or affirmed to by police officer before another officer. He didn't do that.

[THE COURT]: Which is what—which is what happened. We have a complaint by a police officer that is adequate to charge an offense.

[WEST]: It wasn't—it—the State never . . .

THE COURT: Well, you . . .

[WEST]: . . . admitted it into evidence. There's nothing admitted into evidence by the State, Your Honor.

THE COURT: Well, we disagree on that. . . .

[WEST]: Well, when was it—when was it entered into evidence? I've asked for this all through the trial. I've never seen one document. The Prosecutor never said, okay. I'm entering into evidence this on the record. I never got a copy of it. So, when was it entered on the record . . .

THE COURT: That was . . .

[WEST]: . . . and into evidence?

THE COURT: That was the charge. The charge is not entered into evidence—the charge is not evidence.

[WEST]: I'm not talking about the charge. I'm talking about the evidence of (a) or (b). It is supposed to be entered into evidence. . . .

. . . .

THE COURT: Well, as—as far as the [c]ourt's concerned, with [Officer Kutsy's] testimony was evidence and it was . . .

[WEST]: But, [Officer Kutsy] can't give evidence for the State—for the traffic control device. The State must present that evidence. I subpoenaed Mazie Hirono to

bring the evidence in, and I was—she didn't show up. I asked for a contempt

. . .

THE COURT: The charge was speeding. It has nothing to do with traffic control . . .

. . . .

That—that motion is denied.

With respect to her Rule 40 Motion, West argued that the district court's earlier judgment was illegal because it was unsupported by any evidence. West also maintained that she was denied her right to due process because the district court failed to address her motions properly and fairly, accused her of being argumentative and having a bad attitude for filing such "harassing" motions, and sentenced her to pay a $200 fine, when the "normal fine is about $75[.]" The district court ruled on the motion as follows:

THE COURT: Okay. The [c]ourt will treat your motion as a Rule 35 Motion for Reconsideration of Sentence. I'll grant the motion. The judgment—the sentence is reduced to a fine of $64.00 (sixty four dollars) and a $7.00 (seven dollar) Driver Education assessment. All other aspects of the judgment shall remain the same. . . .

The district court entered its final judgment on January 29, 1999, and on February 17, 1999, West timely filed her notice of appeal.

### DISCUSSION

#### A. *Whether West Was Improperly Charged*

##### 1.

West initially alleges that the Complaint issued by Officer Kutsy was fatally defective because it: (1) failed to state the specific subsection of HRS § 291C–102 that she was charged with violating; and (2) was not affirmed or sworn to by Officer Kutsy before another police officer, as required by HRPP Rule 7(d), HRS § 286–10 (1993), HRS § 803–6(d) (1993), and *State v. Knoeppel,* 71 Haw. 168, 785 P.2d 1321 (1990).

■ As noted earlier, however, a violation of HRS § 291C–102 is not a criminal offense but a civil traffic infraction governed by the requirements of HRS chapter 291D and the HCTR.

The requirements for the notice of traffic infraction issued to a driver by a police officer are set forth in HRS § 291D–5 (1993 & Supp.1999), which states:

**Notice of traffic infraction; form; determination final unless contested.** (a) The notice of traffic infraction shall include the complaint and summons for the purposes of this chapter. Whenever a notice of traffic infraction is issued to the driver of a motor vehicle, the driver's signature, driver's license number, and current address shall be affixed to the notice. If the driver refuses to sign the notice, the officer shall record this refusal on the notice and issue the notice to the driver. Individuals to whom a notice of traffic infraction is issued under this chapter need not be arraigned before the court, unless required by rule of the supreme court.

(b) *The form for the notice of traffic infraction shall be prescribed by rules of the district court which shall be uniform throughout the State.* Except in the case of traffic infractions involving parking, *the notice shall include the following:*

(1) *A statement of the specific traffic infraction, including a brief statement of facts, for which the notice was issued;*

(2) A statement of the monetary assessment, established for the particular traffic infraction pursuant to section 291D–9, to be paid by the driver which shall be uniform throughout the State;

(3) A statement of the options provided in section 291D–6(b) for answering the notice and the procedures necessary to exercise the options;

(4) A statement that the person to whom the notice is issued must answer, choosing one of the options specified in section 291D–6(b), within fifteen days;

(5) A statement that failure to answer the notice of traffic infraction within fifteen days shall result in the entry of judgment by default for the State

and a late penalty assessed and, if the driver fails to pay the monetary assessment within an additional thirty days or otherwise take action to set aside the default, notice to the director of finance of the appropriate county that the person to whom the notice was issued shall not be permitted to renew or obtain a driver's license or, where the notice was issued to a motor vehicle, the registered owner will not be permitted to register, renew the registration of, or transfer title to the motor vehicle until the traffic infraction is finally disposed of pursuant to this chapter;

(6) A statement that, at a hearing to contest the notice of traffic infraction conducted pursuant to section 291D–8 or in consideration of a written statement contesting the notice of traffic infraction, no officer will be present unless the driver timely requests the court to have the officer present. The standard of proof to be applied by the court is whether a preponderance of the evidence proves that the specified traffic infraction was committed;

(7) A statement that, at a hearing requested for the purpose of explaining mitigating circumstances surrounding the commission of the infraction or in consideration of a written request for mitigation, the person will be considered to have committed the traffic infraction;

(8) A space in which the driver's signature, current address, and driver's license number may be affixed; and

(9) The date, time, and place at which the driver must appear in court if the driver chooses to go to hearing.

(c) In the case of traffic infractions involving parking, the notice shall be affixed conspicuously to the vehicle as provided in section 291C–167 and shall include the information required by paragraphs (1) to (8) of subsection (b).

(Emphases added.)

Pursuant to HCTR Rule 9(a), a "notice of traffic infraction is sufficient if it contains either a *written description or statutory designation of the traffic infraction.*" (Emphasis added.) Additionally, HCTR Rule 10 allows the State to amend the notice of traffic infraction any time prior to judgment:

**AMENDING THE NOTICE OF TRAFFIC INFRACTION.**

The notice of traffic infraction may be amended at any time prior to judgment. All amendments to the notice of traffic infraction relate back to the issue date on the notice.

HCTR Rule 3 defines "complaint and summons" and "notice of traffic infraction," as follows:

(a) **Complaint and Summons.** The notice of traffic infraction issued to the defendant at the time of the parking or moving violation, whatever its title or denomination.

. . . .

(h) **Notice of Traffic Infraction.** The *complaint and summons,* parking citation, or other form *by which the defendant is notified of the infraction. The notice of traffic infraction is commonly called a ticket.*

(Emphases added.)

In this case, the Complaint issued by Officer Kutsy notifying West of the traffic infraction she allegedly committed is not included in the record on appeal. We are therefore unable to determine whether the Complaint met all the requirements of HRS § 291D–5 and HCTR Rule 9(a). However, West has not challenged the Complaint as being in violation of either provision and indeed concedes that the Complaint charged her with violating HRS § 291C–102. Therefore, the Complaint, in compliance with HRS § 291D–5 and HCTR Rule 9(a), clearly notified West of the statutory designation of the traffic infraction she was alleged to have committed.

More importantly, West requested and received a trial *de novo* pursuant to HRS § 291D–13 (Supp.1999), which provides, in relevant part, as follows:

**Trial.** (a) If, after proceedings to contest the notice of traffic infraction, a determination is made that a person committed the traffic infraction, the person may request,

**70**

within thirty days of the determination, a trial pursuant to the rules of penal procedure and rules of the district court, *provided that arraignment and plea for such trial shall be held at the time of trial.* ...

(Emphasis added.) At the outset of the trial, West was orally "arraigned" and charged with "violating [HRS § 291C–102, subsection (a) ]." Therefore, West was specifically notified that she was being accused of speeding on a county, not state, road or highway.

### 2.

We also find no merit to West's argument that the Complaint issued by Officer Kutsy

7. Hawaiʻi Rules of Penal Procedure Rule 7 provides, in relevant part:

> **THE INDICTMENT, COMPLAINT AND ORAL CHARGE.**
> **(a) Use of Indictment, Complaint or Oral Charge.** The charge against a defendant is an indictment, a complaint or an oral charge filed in court. A felony shall be prosecuted by an indictment or a complaint. Any other offense may be prosecuted by an indictment, a complaint, or an oral charge.
> 
> . . . .
> 
> **(d) Nature and Contents.** The charge shall be a plain, concise and definite written statement of the essential facts constituting the offense charged; provided that an oral charge need not be in writing. . . . A complaint shall be signed by the prosecutor, or it shall be sworn to or affirmed in writing before the prosecutor by the complaining witness and be signed by the prosecutor, except that a complaint alleging a traffic offense may be sworn to or affirmed by a police officer before another police officer as provided by law and need not be signed by the prosecutor. . . . The charge shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. Formal defects, including error in the citation or its omission, shall not be ground for dismissal of the charge or for reversal of a conviction if the defect did not mislead the defendant to his [or her] prejudice.

8. HRS § 286–10 (1993) provides, in relevant part:

> **Arrest or citation.** Except when required by state law to take immediately before a district judge a person arrested for violation of any provision of this chapter, including any rule adopted pursuant to this chapter, any person authorized to enforce the provisions of this chapter, hereinafter referred to as enforcement officer, upon arresting a person for violation of any provision of this chapter, including any rule adopted pursuant to this chapter shall

violated HRPP Rule 7(d),[7] HRS § 286–10,[8] HRS § 803–6(d),[9] and *Knoeppel.*

### a.

▮ HRPP Rule 7(d), which governs the nature and contents of a charge in a criminal case, is not applicable to the Complaint issued by Officer Kutsy, which notified West of the civil traffic infraction she was charged with violating. However, since HCTR Rule 19 expressly provides that a trial requested after a contested hearing in a traffic infraction case "shall be held pursuant to the [HRPP], Rules of the District Court, and

> issue to the alleged violator a summons or citation printed in the form hereinafter described, warning the alleged violator to appear and answer to the charge against the alleged violator at a certain place and at a time within seven days after such arrest.
> 
> The summons or citation shall be printed in a form comparable to the form of other summonses and citations used for arresting offenders and shall be designed to provide for inclusion of all necessary information. . . .
> 
> . . . .
> 
> When a complaint is made to any prosecuting officer of the violation of any provision of this chapter, including any rule adopted hereunder, the enforcement officer who issued the summons or citation shall subscribe to it under oath administered by another official of the department of transportation whose name has been submitted to the prosecuting officer and who has been designated by the director to administer the same.

9. HRS § 803–6 (1993) provides, in relevant part:

> **Arrest, how made.** (a) At or before the time of making an arrest, the person shall declare that the person is an officer of justice, if such is the case. If the person has a warrant the person should show it; or if the person makes the arrest without warrant in any of the cases in which it is authorized by law, the person should give the party arrested clearly to understand for what cause the person undertakes to make the arrest, and shall require the party arrested to submit and be taken to the police station or judge. This done, the arrest is complete.
> 
> . . . .
> 
> (d) Where a citation has been issued in lieu of the requirements of (a) above, the officer who issues the summons or citation may subscribe to the complaint under oath administered by any police officer whose name has been submitted to the prosecuting officer and who has been designated by the chief of police to administer the oath.

Hawai'i Rules of Evidence[,]" HRPP Rule 7(d) is applicable to West's trial and, specifically, West's arraignment at trial. As noted previously, West was orally charged by the State at the outset of her trial *de novo,* and thus, the requirements of HRPP Rule 7(d) were satisfied in this case. The supreme court's decision in *Knoeppel,* which involved a criminal case in which the defendant was not orally charged at his arraignment and did not waive any formal reading of the charge, is thus distinguishable and inapplicable.

b.

West's argument that the Complaint issued by Officer Kutsy violated HRS § 286–10 is similarly without merit. HRS § 286–10, which sets forth procedures for arrests or citations, expressly limits its applicability to "a person arrested for violation of any provision of this chapter[.]" Since West was cited for violating a provision of HRS chapter 291C (not HRS chapter 286), HRS § 291C–164 (1993) (not HRS § 286–10) is applicable to her. HRS § 291C–164 states:

> **Procedure upon arrest.** Except when authorized or directed under state law to immediately take a person arrested for a violation of any of the traffic laws before a district judge, any authorized police officer, *upon making an arrest for violation of the state traffic laws* shall take the name, address, and driver's license number of the alleged violator and the registered license number of the motor vehicle involved and *shall issue to the driver in writing a summons or citation, . . . notifying the driver to answer to the complaint to be entered against the driver at a place and at a time provided in the summons or citation.*

(Emphases added.)

Under the above statute, the purpose of the summons or citation is not only to advise the violator of the traffic infraction, but also to serve as notice to the violator of the necessity "to answer to the complaint . . . at a place and at a time provided in the summons or citation."

In West's case, the Complaint issued by Officer Kutsy—i.e., the traffic ticket—was not the complaint upon which the trial was based. Instead, the oral charge by the State at the commencement of the trial was the "complaint" that West was required to, and did, answer to at the outset of the trial. Therefore, the requirements of HRS § 291C–164 were satisfied.

c.

We also disagree with West's contention that the Complaint issued by Officer Kutsy violated the requirements of HRS § 803–6(d). HRS chapter 803 relates to "arrests" and "search warrants" for "crimes," and, as noted earlier, a violation of HRS § 291C–102 is a civil, not a criminal, offense. Even if HRS § 803–6(d) were applicable to West's trial *de novo,* however, we note that under the statute, the officer issuing a summons or citation "*may* subscribe to the complaint under oath" but is not required to do so. (Emphasis added.) Moreover, since West had an informal hearing to contest and flesh out the charge against her, was subsequently arraigned and orally charged at a trial *de novo,* and was afforded the opportunity at trial to question Officer Kutsy about the incident which gave rise to the charge against her, any constitutional due process concerns about the lack of notice of the charge against her are unfounded.

B. *The Sufficiency of the Evidence*

1.

West was charged with violating HRS § 291C–102, which provides, as follows:

> **Noncompliance with speed limit prohibited.** (a) No person shall drive a vehicle at a speed greater than a maximum speed limit and no person shall drive a motor vehicle at a speed less than a minimum speed limit established by county ordinance.
>
> (b) The director of transportation with respect to highways under the director's jurisdiction may place signs establishing maximum speed limits or minimum speed limits. Such signs shall be official signs and no person shall drive a vehicle at a speed greater than a maximum speed limit and no person shall drive a motor vehicle

at a speed less than a minimum speed limit stated on such signs.

In *State v. Lane*, 57 Haw. 277, 554 P.2d 767 (1976), the defendant was also charged with violating the foregoing statute. The officer who cited the defendant for the violation testified that the offense occurred on Pali Highway between 'Akamu and Wood Streets and that there were speed signs which stated a thirty-five-mile speed limit. In reversing the defendant's conviction, the Hawai'i Supreme Court held:

> There was no evidence, and the record is devoid of information, on the question whether a maximum speed limit had been established by county ordinance or the designated stretch of Pali Highway was subject to the jurisdiction of the director of transportation and the speed signs had been placed by that officer. [The defendant] moved for judgment of acquittal for failure to show that the speed signs were authorized. In denying the motion, the court stated no reasons. The judgment of conviction adjudges only that [the] defendant "has been convicted of and is guilty of the violation of speeding, to wit, 65 mph in a 35 mph zone."
>
> We are unable to determine from the record before us whether the conviction was for violation of § 291C–102(a) or (b). If the conviction was for violation of § 291C–102(a), proof of judicial notice of the applicable ordinance was required, for which alternative procedures are prescribed by HRS § 622–13. The defendant had moved for judgment of acquittal "on the grounds that the State has not shown that the speed signs that [the defendant] had passed were authorized speed signs." The speed at which an automobile may be driven on any highway is governed by ordinance or by statute, and speed signs are erected pursuant thereto. Accordingly, we construe the defendant's motion as a demand for proof of the ordinance. The record does not disclose any offer of, or reference to, any ordinance or the taking of judicial notice of any ordinance by the court. *Cf. State v. Shak*, 51 Haw. 626, 466 P.2d 420 (1970). If the conviction was for violation of § 291C–102(b), proof was required that the designated stretch of Pali

> Highway was under the jurisdiction of the director of transportation and that the speed signs had been placed by that officer. The record does not disclose any offer of evidence on these questions or the taking of judicial notice of any relevant facts. While we express no opinion as to whether we might take judicial notice of any of these facts in our discretion, we would refrain from doing so in this case, where we have not been supplied with the necessary information. AMERICAN LAW INSTITUTE, MODEL CODE OF EVIDENCE, Rules 802, 803 (1942).
>
> HRS § 291C–102 imposes upon the prosecution the burden of proving that a maximum speed limit has been established in one of the two ways specified by the statute. Conviction in the total absence of proof in this respect requires reversal under Rule 52(b), Hawaii Rules of Criminal Procedure.

*Lane*, 57 Haw. at 277–79, 554 P.2d at 768–69.

In *State v. Shak*, referred to by the supreme court in the *Lane* decision, the defendant, who had been convicted of driving through an intersection against a red light, contended on appeal for the first time that the ordinance he was convicted of violating was never proven in the circuit court, and thus, his conviction must be reversed. At the time, HRS § 622–13 (1968), which has since been repealed, provided, in pertinent part:

> **Proof of ordinances, rules, regulations, and other official acts. . . .**
>
> A certified copy or copies of an ordinance or ordinances of any county may be filed by the clerk of the county with any court or magistrate and thereafter the court or magistrate may take judicial notice of the ordinance or ordinances and the contents thereof in any cause, without requiring a certified copy or copies to be filed or introduced as exhibits in such cause.

The supreme court, reaffirming its prior construction of the foregoing statute in *Territory v. Yoshikawa*, 41 Haw. 45 (1955), stated that under the statute:

(1) ... an ordinance could not be judicially noticed unless it was filed in accordance with the statute, or a certified copy was introduced in evidence; (2) ... in a criminal prosecution for alleged violation of an ordinance the prosecution has the burden of proving compliance with HRS § 622–13; and (3) ... in all such prosecutions this court advised introduction of a verified copy of the ordinance, even though filed in accordance with the statute.

*Shak* at 628, 466 P.2d at 421.

In this case, West was orally charged at the commencement of her trial *de novo* with speeding, in violation of HRS § 291C–102(a). The State thus had the burden of proving the applicable ordinance which established the maximum speed limit for the stretch of Lunalilo Home Road on which West was traveling. HRS § 291C–102(a); *Lane.*

The district court took "judicial notice of the speed schedule on file with the district court" and the "city and county ordinances." West contends, however, that this was improper. West also argues that the State failed to establish that Lunalilo Home Road was "listed either on any schedule or [that] an ordinance authorized the speed limit signs on that particular highway[.]" [10]

### 2.

West's first contention is apparently based on *Lane* and the cases which spawned that decision, which appear to indicate that before a district court can take judicial notice of a speed-limit ordinance, the State should offer into evidence a certified copy of the ordinance or speed schedule in question. Since *Lane,* however, HRS § 622–13, the evidentiary statute governing the taking of judicial notice at issue in that case, has been repealed and the Hawai'i Rules of Evidence (HRE), codified in HRS chapter 626, have been adopted.

HRE Rule 202(b) (1993) now specifically requires, in pertinent part, that "[t]he court shall take judicial notice of ... (4) all duly enacted ordinances of cities or counties of this State." In other words, HRE Rule 202(b) removes any discretion that a court might otherwise have in determining whether it will take notice of an ordinance.

The speed limits for the roads in the City and County of Honolulu are established by article 7 of chapter 15 of the Revised Ordinances of Honolulu (ROH) (1990), the Traffic Code. Of particular relevance to this case is ROH § 15–7.2 (1990), which provides as follows:

**Speed limit zones.**

No person shall drive a vehicle on a public highway or street at a speed in excess of the following speed limit zones established or hereafter established therefor by ordinance of the city council.

(a) Fifteen miles per hour.

(1) Any roadway 18 feet or less within the City and County of Honolulu.

(2) On those streets or portions thereof described in Schedule IV attached to the ordinance codified in this section and made a part hereof;* subject, however, to the limitations and extensions set forth therein.

(b) Twenty-five miles per hour.

(1) Any street or highway within the City and County of Honolulu where a speed limit has not been otherwise established.

(2) Any roadway bordering any school grounds, during recess or while children are going to or leaving such school during the opening or closing hours or while the playgrounds of any such school are in use by school children.

(3) On those streets or portions thereof described in Schedule V attached to the ordinance codified in this section and made a part hereof;* subject, however, to the limitations and extensions set forth therein.

---

**10.** West also argues that if Lunalilo Home Road was a highway under the jurisdiction of the state director of transportation, proof was required that the speed limit signs on that highway were authorized by an administrative rule promulgated pursuant to HRS chapter 91, the Hawai'i Administrative Procedures Act. Since West was orally charged with violating subsection (a) of HRS § 291C–102, however, we need not address what standards of proof must be met by the State in establishing a violation of subsection (b) of HRS § 291C–102.

(c) Thirty miles per hour. On those streets or portions thereof described in Schedule VI attached hereto and made a part hereof;* subject, however, to the limitations and extensions set forth [t]herein.

(d) Thirty-five miles per hour. On those streets or portions thereof described in Schedule VII attached to the ordinance codified in this section and made a part hereof;* subject, however, to the limitations and extensions set forth therein.

(e) Forty-five miles per hour. On those streets or portions thereof described in Schedule VIII attached to the ordinance codified in this section and made a part hereof;* subject, however, to the limitations and extensions set forth therein.

(f) Fifty miles per hour. On those streets or portions thereof described in Schedule IX attached to the ordinance codified in this section and made a part hereof;* subject, however, to the limitations and extensions set forth therein.

(g) Sixty-five miles per hour. On those streets or portions thereof described in Schedule X attached to the ordinance codified in this section and made a part hereof;* subject, however, to the limitations and extensions set forth therein.

(h) Fifty-five miles per hour. On those streets or portions thereof described in Schedule XXXIII attached to the ordinance codified in this section and made a part hereof;* subject, however, to the limitations and extensions set forth therein.

(i) 10 miles per hour. On those streets or portions thereof described in Schedule XXXVII attached to the ordinance codified in this section and made a part hereof;* subject, however, to the limitations and extensions set forth therein.

Table 15.0, which is at the beginning of ROH chapter 15, lists the titles of thirty-eight different schedules and states the section of chapter 15 that the schedules are referred to. With regard to the schedules referred to in ROH § 15–7.2, for example, Table 15.0 includes the following listing:

| Schedule | Title | Section |
|---|---|---|
| . . . . | | |
| IV | Speed Limit Zones—15 Miles Per Hour | 15–7.2 |
| V | Speed Limit Zones—25 Miles Per Hour | 15–7.2 |
| VI | Speed Limit Zones—30 Miles Per Hour | 15–7.2 |
| VII | Speed Limit Zones—35 Miles Per Hour | 15–7.2 |
| VIII | Speed Limit Zones—45 Miles Per Hour | 15–7.2 |
| IX | Speed Limit Zones—50 Miles Per Hour | 15–7.2 |
| X | Speed Limit Zones—65 Miles Per Hour | 15–7.2 |
| . . . . | | |

A footnote to the schedule includes the following statement:

* **Note:** The schedules referred to in this table are on file with the office of the city and county clerk and the department of transportation services, City and County of Honolulu, and are available for examination by the general public during reasonable hours.

Based on a review of ROH § 15–7.2 and Table 15.0, it is evident that the speed limit for Lunalilo Home Road is not set forth in either provision. Indeed, in order to determine whether Lunalilo Home Road is listed on a particular speed schedule, it is necessary to visit "the office of the city and county clerk [or] the department of transportation services, City and County of Honolulu" to examine the schedules.

The question West raises is whether the district court properly took judicial notice of these schedules, which are not codified in the ROH, and thereby determined, as a matter of law, the specific speed limit for the portion of Lunalilo Home Road on which West was stopped for speeding. We conclude that without the applicable schedule before it, the district court did not have

sufficient evidence upon which to determine the applicable speed limit on the particular county road in question. Without the applicable schedule in the record on appeal, moreover, it is impossible for this court to take judicial notice of the applicable speed limit established by county ordinance, a necessary element that must be established by the State to prove an HRS § 291C–102(a) [11] violation.

Generally, in the absence of a statutory requirement, state courts will not take judicial notice of county ordinances; such ordinances must be pleaded and proved. 29 Am.Jur.2d Evidence § 126, at 155 (1994). The reason ordinances are distinguished from state statutes for purposes of the taking of judicial notice is that "while state statutes are compiled, published, and distributed by recognized professional entities who must vouch for the integrity of their product and thus are likely accurate, readily ascertainable and available, such is often not the case with ordinances." Id. at 155–56.

As noted earlier, however, HRE Rule 202(b) specifically requires that judicial notice be taken by Hawai'i courts of duly enacted ordinances of the cities or counties of this State. We also observe that the ordinances of all the cities or counties in Hawai'i are codified and therefore are readily ascertainable and available for judicial notice purposes. Such is not the case, however, with

the speed schedules referred to in ROH § 15–7.2, which are available at only two locations. Therefore, proof of the relevant speed schedules is required, and judicial notice should not be taken of the schedules.

The transcripts of the trial below indicate that the district court took judicial notice of the speed schedule "on file with the district court." However, it does not appear from the transcripts that the "speed schedule on file with the district court" was actually reviewed by the district court, the DPA, or West. Additionally, there is no indication in the record as to whether the speed schedule on file with the district court was the most current version available.[12] Moreover, in its answering brief, the State attached as Appendix "B", a copy of Schedule VI, which the State claimed established the speed limit for Lunalilo Home Road. However, the attached Schedule VI indicates that Lunalilo Home Road is listed on both Schedule VI, which sets a 30 mph speed limit, and Schedule V, which sets a 25 mph speed limit:

### SPEED LIMIT ZONES—30 MILES PER HOUR

Section 15–7.2(c). The following streets or portions thereof are hereby established as 30 miles per hour speed limit zones subject, however, to the limitations and extensions set forth:

| LOCATION | AUTHORITY |
|---|---|
| . . . . | |
| LUNALILO HOME RD., from Kalanianaole Hwy. to Hawaii Kai Dr., *except for portion specified in Schedule V.* | TS 96–8, 10/31/96 |

11. In contrast, HRS § 291C–102(b) requires proof that the maximum speed limits on state highways be posted on "official signs[.]" Pursuant to HRS § 291C–31(c) (1993), moreover, "[w]henever official traffic-control devices are placed in position approximately conforming to law, such devices shall be presumed to have been so placed by the official act or direction of lawful authority, unless the contrary shall be established by competent evidence."

12. We did examine the speed schedules on file with the clerk of the City and County of Honolulu (the County) to determine if they were judicially noticeable. Our examination revealed that a 1976 compilation of traffic schedules approved

by the County Council is updated with "amendments" which are made approximately every month. For example, there have been eight amendments this calendar year. Curiously, the amendments are signed by the County Director of Transportation Services and were not enacted pursuant to an ordinance passed by the County Council. Moreover, although the County Council, by Revised Ordinances of Honolulu § 15–3 (1990), has delegated authority to the County Director of Transportation Services to amend schedules relating to placement of traffic control devices, no such delegation of authority exists with respect to speed schedules.

(Emphasis added.) We are unable to tell, based on the record on appeal, whether the portion of Lunalilo Home Road on which West was stopped for speeding was part of Schedule VI or V.

Under the circumstances and in light of *Lane,* we must conclude that the State failed to satisfy its burden of establishing the speed limit established by county ordinance.

### C. *The FsOF*

In light of our conclusion that the State failed its burden of proving the schedule referred to in the county ordinance that established the maximum speed limit on the portion of Lunalilo Home Road that West was stopped for speeding, it is unnecessary for us to address West's contention that the district court reversibly erred in failing to enter FsOF as to the many motions she filed below. We note, however, that the district court clearly entered oral FsOF in rendering its judgment in this case.

Reversed.