18 P.3d 884

**STATE of Hawai'i, Petitioner/Plaintiff–Appellee,**

**v.**

**Ivy WEST, Respondent/Defendant–Appellant.**

**State of Hawai'i, Petitioner/Plaintiff–Appellee,**

**v.**

**Ivy West, Respondent/Defendant–Appellant.**

Nos. 22183, 22337.

Supreme Court of Hawai'i.

Jan. 31, 2001.

---

Caroline M. Mee, Deputy Prosecuting Attorney, for petitioner/plaintiff-appellee on the writ.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by RAMIL, J.

On November 8, 2000, we granted the application for a writ of certiorari in No. 22183, filed by the State of Hawai'i (State) [1] on October 31, 2000, to review the Intermediate Court of Appeals' (ICA) Summary Dispo-

---

1. A violation of HRS § 291C–102 is a civil traffic infraction, rather than a criminal offense. *See* HRS § 291D–2, –3 (1993). Thus, we refer to the State of Hawai'i as the "State," rather than as the "prosecution."

2. HRS § 291C–102(a) provides: "No person shall drive a vehicle at a speed greater than a maximum speed limit and no person shall drive a motor vehicle at a speed less than a minimum speed limit established by county ordinance."

3. HRS § 286–102 reads, in relevant part:

sition Order (SDO), filed on October 2, 2000. The SDO reversed the district court's judgment, which was filed on November 4, 1998, that West committed a traffic infraction in violation of Hawai'i Revised Statutes (HRS) § 291C–102(a) (1993).

On November 8, 2000, we also granted the State's application for writ of certiorari in No. 22337 to review the ICA's opinion, which was filed on October 2, 2000. In its published opinion, the ICA reversed the district court's judgment, which was filed on January 5, 1999, that West committed a traffic infraction in violation of HRS § 291C–102(a).

Because the State contends in both applications for writs of certiorari that there was sufficient evidence to find West guilty inasmuch as the trial court properly took judicial notice of speed schedules, we dispose of the two cases in this decision. We hold that there was sufficient evidence to find West guilty because the trial court did, indeed, properly take judicial notice of speed schedules, under Hawai'i Rules of Evidence (HRE) Rule 202(b) (1993) and, accordingly, vacate the decisions of the ICA and affirm the trial courts' findings of guilt and subsequent sentences.

I.  *Background*

A.  *Appeal No. 22183*

The State brought an action against West for speeding, in violation of HRS § 291C–102(a),[2] and driving without a license, in violation of HRS § 286–102 (1993 & Supp. 1998).[3] At West's bench trial, Officer Will Cluney of the Honolulu Police Department testified that, at about 2:00 p.m. on July 10, 1998, he measured, by laser gun, West traveling on Lunalilo Home Road at 48 m.p.h. Cluney then testified that the "official city

(a) No person, except one exempted under section 286–105, one who holds an instruction permit under section 286–110, one who holds a commercial driver's license issued under section 286–239, or a commercial driver's license instruction permit issued under section 286–236, shall operate any category of motor vehicles listed in this section without first being appropriately examined and duly licensed as a qualified driver of that category of motor vehicles.

and county speed signs" indicated that the speed limit was 30 m.p.h. Subsequently, the State successfully asked the trial court to take judicial notice of the speed limit:

> [THE STATE]: May the Court take judicial notice that the posted speed limit on Lunalilo Home Road traveling in the makai direction is 30 miles-an-hour as indicated by the speed schedule? This is on file with the District Court.

> THE COURT: You have it there?

> [THE STATE]: Yes, your Honor.

> THE COURT: You showed [West]?

> [THE STATE]: And may the record reflect that I'm showing speed schedule— this is schedule four, speed limit, 30 miles-an-hour under Section 15–7.2(3)(a) of the Revised Ordinances of City and County of Honolulu, State of Hawaii, to defense counsel [sic].[4]

> THE COURT: Based upon [West's] objection to those materials, it will be—noted by the Court over the objections of [West].[5]

> So you have your record on that now.

After further argument, the trial court found West guilty.

On appeal, the ICA summarily reversed the trial court's judgment that West violated HRS § 291C–102(a), by referencing its disposition in appeal No. 22337. *See State v. West*, 95 Hawai'i 61, 18 P.3d 923 (App.2000).

---

**4.** In its answering brief, the State explains its two misstatements:

> The State [mistakenly] cited to the 1978 (1983) edition of the *Revised Ordinances of Honolulu* ("*R.O.H.*"). Section 15–7.2(3)(a) was recodified in the 1990 edition of the *R.O.H.* as § 15–7.2(c), but the provision's substance remained exactly the same. It appears that the State inaccurately referred to Schedule "VI" as Schedule "IV", however, it is clear from the cited section—*R.O.H.* § 15–7.2(3)(a)—that the Schedule referred to was, in fact, "Schedule VI."

**5.** The record is unclear as to what West's specific objections were, or whether there were even any.

**6.** Although judicial notice of law is technically considered evidentiary, some have argued that it is more properly considered procedural:

### B. *Appeal No. 22337*

In a similar case, the State brought a separate claim against West of speeding in violation of HRS § 291C–102(a). At West's bench trial, Officer Mark Kutsy of the Honolulu Police Department testified that, at about 2:50 p.m. on July 20, 1998, he spotted West driving on Lunalilo Home Road. Using his laser gun, Kutsy determined that West was traveling at 51 m.p.h. He noted that the "official City and County of Honolulu or State of Hawaii traffic control signs" indicated that the speed limit was 30 m.p.h. The State then asked the trial court to take judicial notice "of the speed schedule on file with the district court" and "city ordinances." Over West's objection, which referenced *State v. Lane*, 57 Haw. 277, 554 P.2d 767 (1976), the trial court took judicial notice of the speed schedules and city and county ordinances. After further proceedings, the trial court found West guilty.

On appeal, the ICA held that the trial court erred in taking judicial notice of the speed schedules, and, therefore, that the State failed to present sufficient evidence to find West guilty. *See State v. West*, 95 Hawai'i at 74–75, 18 P.3d at 936–37 (App.2000).

### II. *Standards of Review*

### A. *Judicial Notice* [6]

▇ [D]ifferent standards of review must be applied to trial court decisions

> When the sources of law were dubious at best, the job of sorting out the applicable law was shifted to the jury, witness how foreign law and municipal ordinances were treated as questions of fact. When next judges began to rule on the tenor of this law, even though it was still "fact" to be developed by the parties, there may have been some justification for describing this process as judicial notice. As all law has become increasingly accessible and judges have tended to assume the duty to rule on the tenor of all law, the notion that this process is part of judicial notice has become increasingly an anachronism. Evidence, after all, involves the proof of facts. How the law is fed into the judicial machine is more appropriately an aspect of the law pertaining to procedure. Thus it is that the electronic beeps sounded by today's data processing equipment may be actually tolling the intellectual death

regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard.

*State v. Staley,* 91 Hawai'i 275, 281, 982 P.2d 904, 910 (1999) (quoting *Kealoha v. County of Hawaii,* 74 Haw. 308, 319, 844 P.2d 670, 676, *reconsideration denied,* 74 Haw. 650, 847 P.2d 263 (1993)).

### B. *Sufficiency of Evidence*

" '[V]erdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the [trier of fact's] findings.' " *Staley,* 91 Hawai'i at 281, 982 P.2d at 910 (quoting *Tsugawa v. Reinartz,* 56 Haw. 67, 71, 527 P.2d 1278, 1282 (1974)). "Substantial evidence" is defined as "credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion." *Id.* (citing *Aga v. Hundahl,* 78 Hawai'i 230, 237, 891 P.2d 1022, 1029 (1995), and *In re Doe,* 76 Hawai'i 85, 93, 869 P.2d 1304, 1312 (1994) (citations omitted)).

### III. *Discussion*

### A. *Existing Hawai'i Law*

HRE Rule 202(b) mandates that "[t]he court *shall* take judicial notice of . . . all duly enacted ordinances of cities or counties of this State." (Emphasis added.)

Although we addressed judicial notice with respect to speed limits established by county ordinance in *State v. Lane,* 57 Haw. 277, 554 P.2d 767 (1976),[7] that case was decided before the enactment of HRE Rule 202(b). Prior to 1980, when Rule 202(b) was enacted,

knell of this discrete subject-matter hitherto dealt with as a subdivision of the law of evidence.
McCormick on Evidence § 335 (5th ed.1999).

7. We held that "[i]f the conviction was for violation of § 291C–102(a), proof of judicial notice of the applicable ordinance was required, for which alternative procedures are prescribed by HRS

HRS § 622–13 (1968) established three ways that a county ordinance could be proven:

(a) Whenever, in any proceedings before a court or person having authority to hear, receive and examine evidence, it is necessary to prove any ordinance of any county of the State, . . . a copy of such ordinance, bearing the certificate, as to its correctness, of the county clerk and under the seal of the county, . . . shall be admitted in evidence as prima facie proof of the contents thereof.

(b) A certified copy or copies of an ordinance or ordinances of any county may be filed by the clerk of the county with any court and thereafter the court may take judicial notice of the ordinance or ordinances and the contents thereof in any cause, without requiring a certified copy or copies to be filed or introduced as exhibits in such cause.

(c) Judicial notice shall be taken of an ordinance or ordinances of any county if a party requests it and (1) furnishes the court sufficient information to enable it properly to comply with the request, and (2) has given each adverse party such notice as the court may require to enable the adverse party to meet the request. The court shall afford the adverse party reasonable opportunity to present information relevant to the tenor of the ordinance to be noticed. If the court has insufficient information to enable it to notice the matter judicially, it shall decline to take judicial notice thereof.

In 1980, however, HRS § 622–13 was repealed.[8] *See* 1980 Haw. Sess. L. Act 164, § 6 at 273. In its place, the legislature enacted HRE Rule 202(b), which requires courts simply to take judicial notice of "all duly enacted ordinances of cities or counties of this state." *See* 1980 Haw. Sess. L. Act 164, § 1 at 246.

§ 622–13." *Lane,* 57 Haw. at 278, 554 P.2d at 768.

8. In *West,* 95 Hawai'i at 72–73, 18 P.3d at 934–35, the ICA discussed *State v. Shak,* 51 Haw. 626, 466 P.2d 420 (1970), and *Territory v. Yoshikawa,* 41 Haw. 45 (1955). Given that HRS § 622–13, which is the focus of these two opinions, has been repealed, such analysis seems irrelevant and potentially distracting.

The ICA applied HRE Rule 202(b) in *State v. Vallejo*, 9 Haw.App. 73, 78–79, 823 P.2d 154, 158 (1992), and ruled that the trial court properly took judicial notice of the speed schedules: [9]

> Speed limits for Honolulu county roads are established by Revised Ordinances of Honolulu (ROH) 1978 Chapter 15 (1983 ed.), the Traffic Code. The Traffic Code establishes a myriad of regulations, including speed limits, governing traffic on county roads. Speed limits are established by ROH § 15-7.2. The names of the individual streets covered by the speed limits in ROH § 15-7.2 are listed in Schedules IV through X, XXXIII, and XXXVII, attached to and incorporated in the Traffic Code. Rule 202(b), Hawaii Rules of Evidence (HRE) (1985), requires the courts to take judicial notice of all duly enacted ordinances. When the court took judicial notice of the Schedules filed with the clerk, it took judicial notice of ROH § 15-7.2. Consequently, the ordinance was proved.

**9.** The ICA's published opinion in *West* neglects to mention its earlier decision in *Vallejo*.

**10.** Most states with statutes mandating courts to take judicial notice of municipal ordinances require counsel to explicitly ask that the trial court take judicial notice of the particular municipal ordinance. For example, Pennsylvania has a state statute that mandates that the trial courts "shall" judicially note the contents of the code and bulletin. 45 Pa.C.S.A. § 506. Nevertheless, the Pennsylvania Superior Court ruled that counsel must first "expressly ask the lower court to take judicial notice." *Commonwealth v. Kittelberger*, 420 Pa.Super. 104, 616 A.2d 1, 3 (1992). *See also Commonwealth v. Marcus*, 690 A.2d 842, 844–45 (Pa.Cmwlth.Ct.1997); *Dream Mile Club v. Tobyhanna Township Board of Supervisors*, 150 Pa.Cmwlth. 309, 615 A.2d 931, 933 (1992). In interpreting the relevant statute, the Commonwealth Court of Pennsylvania explained that:

> Essentially, the intent of Judicial Code § 6107 is to remove any discretion a court might have in determining whether it will take notice of an ordinance. The section does not direct a court to act on its own in obtaining evidence for the record, but it does provide a court with the authority to take whatever steps the court deems necessary to apply an ordinance.

*Dream Mile Club*, 615 A.2d at 934. *See also City of Mandan v. Mertz*, 399 N.W.2d 298, 299 (N.D. 1987).

The two primary reasons for judicial notice of such "foreign" law are increases in: (1) accessibility and (2) verifiability. With respect to the first rationale, McCormick on Evidence § 335 (5th ed.1999) explains how enhanced availability of foreign law has facilitated the taking of judicial notice by courts of such law:

> Indeed, when the source-material was not easily accessible to the judge, as in the case of "foreign law" or city ordinances, law has been treated as a peculiar species of fact, requiring formal proof. We shall see, however, that as these materials become more accessible, the tendency is toward permitting the judges to do what perhaps they should have done in the beginning, that is to rely on the diligence of counsel to provide the necessary materials, and accordingly to take judicial notice of *all* law. This seems to be the goal toward which the practice is marching.

With regard to the second justification, McCormick on Evidence § 335 observes that judicial notice of foreign law "could certainly be justified on the principle of certainty and verifiability." Similarly, Jones on Evidence § 2:72 (7th ed.1992) notes that the refusal of judicial notice of municipal ordinances "was understandable when trustworthy copies of such laws were hard to come by, but is difficult to justify today." Both reasons are interconnected: the increased accessibility of foreign law makes it more easily verifiable; in turn, like the Internet, the usefulness of this ready availability is predicated on its trustworthiness. Factors affecting these dual justifications include: (1) publication, *see* McCormick on Evidence § 335; Jones on Evidence § 2:81, (2) codification, *see* Jones on Evidence

This court has not previously dealt with the application of HRE Rule 202(b), and we now address this question for the first time.

## B. *Judicial Notice of Municipal Ordinances in Hawai'i*

■ We hold that the courts are duty-bound to take "judicial notice" of municipal ordinances. Given the uniqueness of this state's judicial system, we interpret the mandatory language of the judicial notice rule differently than other states have.[10] Whereas other states have *municipal* courts, *see* Jones on Evidence § 2:85 (7th ed.1992), our state does not have such courts. Rather, *state* circuit and district courts are authorized to try all cases arising from the violation of ordinances in force in the counties. HRS §§ 603-23, 604-11 (1993 & Supp.1996). Thus, state courts must take "judicial notice" of municipal ordinances, just as they do of state statutes. As Jones on Evidence § 2:2 explains, "It is axiomatic that a court must

'know' the law within its jurisdiction; hence a court is required to 'notice' applicable law and to instruct the jury thereon, and the litigants are not permitted to attempt to persuade the jury that the law is other than the court finds it to be." Moreover, Jones on Evidence observes that "[a]lthough the law varies from jurisdiction to jurisdiction as to what laws are subject to judicial notice, ... it is universally accepted that a court must judicially notice the public law of its own jurisdiction." *Id.* at § 2.2 n. 2. Therefore, state circuit and district courts must treat ordinances like state statutes, specifically, as not required to be admitted in evidence or to be expressly requested by counsel. Requiring otherwise would not only vitiate the repeal of HRS § 622–13 and the corresponding enactment of HRE Rule 202(b)'s mandatory language, *see supra* Section III.A, but also ignore the structural reality of our judicial system.

C. *Application to These Cases*

█ In *West,* 95 Hawai'i at 74, 18 P.3d at 936, the ICA decided that the speed schedules, which are not codified or enacted by the city council, are not ordinances for purposes of judicial notice.[11] We disagree.

The schedules are properly incorporated by reference in the Revised Ordinances of Honolulu (ROH) by ROH § 15–7.2 (1997), which prescribes various speed limits by referring to different schedules.[12] For example, ROH § 15–7.2(c) reads: "Thirty miles per hour. On those streets or portions thereof described in Schedule VI attached hereto and made a part hereof; subject, however, to the limitations and extensions set forth herein." Table 15.0, at the front of the chapter, lists thirty-eight schedules and the sections of the ROH they refer to.[13] More-

over, ROH § 15–3.1(d)(2) (emphasis added) specifies that the speed limit signs, which are based on the speed schedules, *see id.* § 15–7.3, are to be treated as enacted by ordinance:

> Any permanent or temporary traffic control device located, selected, installed or maintained by the director pursuant to the provisions of this article *shall have the full force and effect as if it were located, selected, installed or maintained by ordinance.* Any person violating such traffic control device shall be subject to the penalties provided in this article or HRS Chapter 291C.

(Emphasis added.) Such explicit language demonstrates the City Council's express intention that the speed limit signs, which are based on the speed schedules, would designate the relevant "speed limit established by county ordinance" for purposes of HRS § 291C–102(a).

In its decision, the ICA observed that the County Director of Transportation, not the City Council, had signed the schedules, and, therefore, questioned the legitimacy of the schedules. *See West,* 95 Hawai'i at 75 n. 12, 18 P.3d at 937 n. 12. The City Council, however, properly delegated the authority to "locate, select, install and maintain traffic control devices, including temporary traffic control devices," which are based on the speed schedules, to the director of transportation services. ROH § 15–3.1(a)(1). In turn, "traffic control devices" are defined as "*all signs,* signals, markings, and devices not inconsistent with this chapter placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic." HRS § 291C–1 (emphasis added). *See also* ROH § 15–2.26.

§ 2:85, and (3) compilation, *see* McCormick on Evidence § 335; Jones on Evidence § 2:81.

11. The ICA's reasoning necessarily implies that all speed limits, as currently established, are not valid for purposes of speed limit violations. *See* HRS § 291C–102(a) ("No person shall drive a vehicle at a speed greater than a maximum speed limit ... established by county ordinance."); *West,* 95 Hawai'i at 75, 18 P.3d at 937 (arguing that the speed schedules are not enacted by ordinance).

12. In *Vallejo,* 9 Haw.App. at 78–79, 823 P.2d at 158, the ICA similarly observed that the speed schedules are "incorporated in the Traffic Code" of the ROH.

13. The editor's note at the bottom of the table indicates that the "schedules referred to in this table are on file with the office of the city and county clerk and the department of transportation services, City and County of Honolulu, and are available for examination by the general public during reasonable hours." ROH, Table 15.0.

In addition, to hold that the speed schedules are not ordinances for purposes of HRS § 291C–102(a) and HRE Rule 202(b), as insisted by the ICA, *see West*, 95 Hawai'i at 75, 18 P.3d at 937, would be wholly impractical. The City Council should not be forced to pass ordinances setting the speed limit for each and every street in the county. As the State correctly pointed out in its application for writ of certiorari, "Requiring the City Council to pass a separate ordinance for each such change would not only squander the Council's valuable time on ministerial duties but the inevitable delay would jeopardize public safety." In fact, HRS § 291C–102(b), the very statute dealing with noncompliance of speed limits on state thoroughfares, recognizes the importance of delegation by the legislative body in setting the speed limits: "The [state] director of transportation with respect to highways under the director's jurisdiction may place signs establishing maximum speed limits or minimum speed limits."

Because the trial court properly took judicial notice of the speed limit, as required by HRE Rule 202(b), we hold that there was sufficient evidence to find West guilty of violating HRS § 291C–102(a).

### IV. *Conclusion*

For the foregoing reasons, we: (1) vacate the ICA's SDO in appeal No. 22183, filed on October 2, 2000, and affirm the district court's judgment, filed on November 4, 1998; and (2) vacate the ICA's opinion in appeal No. 22337, filed on October 2, 2000, and affirm the district court's judgment, filed on January 5, 1999.

