324 P.3d 912

STATE of Hawai'i, Respondent/Plaintiff–Appellee,

v.

Terry J. DAVIS, Petitioner/Defendant–Appellant.

No. SCWC–12–0000074.

Supreme Court of Hawai'i.

Feb. 26, 2014.

requested privacy regarding his address and telephone number in asking for an unpublished listing").

John M. Tonaki and Taryn R. Tomasa, for petitioner.

Keith M. Kaneshiro, Honolulu, and Brian R. Vincent, for respondent.

RECKTENWALD, C.J., NAKAYAMA, McKENNA, and POLLACK, JJ., with ACOBA, J., Concurring.

Opinion of the Court by POLLACK, J.

Terry Davis was convicted by the District Court of the First Circuit (district court) of operating a vehicle after license and privilege have been suspended or revoked for operating a vehicle under the influence of an intoxicant, in violation of Hawai'i Revised Statutes (HRS) §§ 291E–62(a)(1) and/or (2) (2007).

On appeal, the Intermediate Court of Appeals (ICA) vacated the district court judgment, concluding that the charge against Davis for violating HRS §§ 291E–61(a)(1) and/or (2) was defective for failing to allege the requisite state of mind. The ICA remanded the case to the district court with instructions to dismiss the case without prejudice.

Davis contends in his application for writ of certiorari (Application) that the ICA gravely erred in failing to address whether there was sufficient evidence to sustain the conviction and whether double jeopardy precludes retrial. Davis requests this court to vacate the ICA's September 10, 2013 Judgment on Appeal, and remand the case to the district court with instructions to reverse the conviction and bar further prosecution based on double jeopardy.

We hold that, under article I, section 10 of the Hawai'i Constitution, a reviewing court is required to address an express claim of insufficiency of the evidence prior to remanding for a new trial based on a defective charge. Upon our review of the sufficiency of the evidence, we conclude that substantial evidence supported the conviction, and therefore double jeopardy does not preclude a retrial. Accordingly, we affirm the ICA's judgment for the reasons set forth in this opinion.

I.

On January 11, 2012, the State orally charged Davis with committing the offense of operating a vehicle after license and privilege have been suspended or revoked for operating a vehicle under the influence of an intoxicant (Oral Charge),[1] in violation of HRS §§ 291E–62(a)(1) and/or (2).[2]

---

1. The Oral Charge was as follows:

   On or about July 22, 2011, in the City and County of Honolulu, State of Hawai'i, you, Mr. Davis, as a person whose license and privilege to operate a vehicle had been revoked, suspended, or otherwise restricted pursuant to Section 291E–62 or to part 3 of Chapter 291E or Section 291E–61 or 291E–61.5 or to part 7

   or part 14 of Chapter 286 or Section 200–81— 291–4, 291–4.4, 291–4.5, or 291–7 of the Hawai'i Revised Statutes as those provisions were in effect on December 31, 2001, you did operate or assume actual physical control of any vehicle upon a public way, street, or highway, in violation of any restrictions placed on his license and/or while your license or privilege

Davis objected to the Oral Charge as insufficient for not including a state of mind allegation, and requested the case be dismissed.[3] The district court denied the motion to dismiss.[4]

The case then proceeded to trial. Honolulu Police Department (HPD) Officer Kelvin Hayakawa (Officer Hayakawa) was the only witness to testify.

On July 22, 2011, Officer Hayakawa responded to a motor vehicle collision in the area of Kuala Street and Kamehameha Highway.[5] Officer Hayakawa testified that the location of the offense on Kuala Street and Kamehameha Highway was in the City and County of Honolulu, State of Hawai'i. Upon his arrival, Officer Hayakawa observed a white pickup truck and a four-door car pulled over on the shoulder of Kamehameha Highway. The occupants were standing outside of their respective vehicles. Davis identified himself as the driver of the pickup truck.[6]

Officer Hayakawa initiated a motor vehicle collision investigation. He found damage to the front bumper of the pickup truck and damage to the other vehicle's rear bumper.

The Officer then conducted a background check on Davis's driver's license status. Officer Hayakawa did not recall whether he checked the status of Davis's driver's license on the computer in his patrol car or through dispatch, but he recalled that he was informed that Davis's license had been revoked.[7]

Officer Hayakawa issued a citation (Citation) to Davis for "driving with a revoked license," [8] and he gathered Davis's personal information including his date of birth, address, and "whatever information [he] needed for the report and the citation." The Citation indicated that Davis's name was "Terry J. Davis," his height and weight was 6'1" and 210 pounds, he had brown hair and brown eyes, his date of birth, and the last four numbers of his social security number.

The State sought to admit into evidence State's Exhibit 1, the Judgment of Conviction and Probation Sentence for Cr. No. 06–1–0933 issued by the Circuit Court of the First Circuit (circuit court) on March 19, 2007 (Exhibit 1 or Judgment of Conviction), under Hawai'i Rules of Evidence (HRE) Rule 902(1) (Supp.2001) as a self-authenticating

to operate a vehicle remained suspended or revoked, thereby committing the offense of operating a vehicle after license and privilege have been suspended or revoked for operating a vehicle under the influence of an intoxicant, in violation of Section 291E–62(a)(1) and/or (a)(2) of the Hawai'i Revised Statutes.
You are subject to sentencing in accordance with Section 291E–62(b)(2) of the Hawai'i Revised Statutes where you have committed the instant offense within five years of a prior conviction for an offense under Section 291E–62 or under Section 291–1.5 of the Hawai'i Revised Statutes as that section was in effect on December 31, 2001.

2. HRS § 291E–62 provides as follows:
(a) No person whose license and privilege to operate a vehicle have been revoked, suspended, or otherwise restricted pursuant to this section or to part III or section 291E–61 or 291E–61.5, or to part VII or part XIV of chapter 286 or section 200–81, 291–4, 291–4.4, 291–4.5, or 291–7 as those provisions were in effect on December 31, 2001, shall operate or assume actual physical control of any vehicle:
(1) In violation of any restrictions placed on the person's license; or
(2) While the person's license or privilege to operate a vehicle remains suspended or revoked.

3. The State's Complaint was filed on August 22, 2011. On September 26, 2011, the State filed an Amended Complaint. Neither the Complaint nor the Amended Complaint included a state of mind allegation as part of the charge.

4. The Honorable Paula Devens presided.

5. The parties refer to "Kamehameha Highway" as "Kam Highway."

6. During his testimony, Officer Hayakawa identified Davis in the courtroom as the same person to whom he issued a citation on July 22, 2011.

7. Davis objected to the prosecutor's question asking Officer Hayakawa if he remembered the result of the background checks he performed on Davis's driver's license status on hearsay and confrontation grounds. The district court overruled the objection.

8. The "Citation for Traffic Crime(s) Arrest" (Citation) issued to "Terry J. Davis" by Officer Hayakawa on July 22, 2011 indicated that Officer Hayakawa cited Davis for violating HRS § 286–132 (2007), driving motor vehicle while license revoked.

public document. The Judgment of Conviction reflected that a Terry Jay Davis had been convicted in Count I of habitually operating a vehicle under the influence of an intoxicant, in violation of HRS § 291E–61.5 (2007),[9] and in Count II of operating a vehicle after license and privilege have been suspended or revoked for operating a vehicle under the influence of an intoxicant, in violation of HRS § 291E–62 (2007).[10] The circuit court had imposed a sentence of: "PROBATION: FIVE(5) YEARS AS TO CT. 1." As a special condition of probation, "TERRY JAY DAVIS" was prohibited from operating a motor vehicle throughout the period of probation.[11]

Davis objected to the admission of Exhibit 1, arguing, inter alia, that it did not comport with the requirements of HRE Rule 902(1) or 902(4). Davis argued that Exhibit 1 lacked proper authentication because there was no attestation with regard to the seal, and there was no evidence that the signature was made by a custodian authorized to make such a certification.

Davis also objected to the admission of Exhibit 1 based on hearsay grounds with respect to "the contents of the document itself as well as the hearsay statement that is the certification itself."

The State responded that Exhibit 1 was generated and filed by the circuit court and included both the judge and clerk's name on the document. Also, Exhibit 1 fell under the hearsay exception set forth in HRE Rule 803(b)(8) (Supp.2002) because the document was a "public record."

The district court admitted Exhibit 1 into evidence as a self-authenticating document under HRE Rule 902(1) and as a public record under HRE Rule 803(b)(8).

Davis then made a motion for judgment of acquittal, arguing that there was insufficient evidence to establish a prima facie case. He argued that there was "nothing in [Exhibit 1] related to any continued license suspension" or that indicated "Davis's license was suspended on the date of the incident ... for the offense of DUI." Thus, Davis maintained that the State had not adduced any evidence to show that Davis's license was actually suspended at the time of the DUI offense on July 22, 2011.

The State responded that Davis was sentenced to a five-year probation term, and Condition 7R of the Special Conditions of Probation (Special Condition 7R) set forth in Exhibit 1 "prohibited Davis from operating a motor vehicle throughout the period of probation." The State pointed out that the probation term started on March 19, 2007 and was scheduled to run until March 18, 2012.

The district court denied the motion for judgment of acquittal, finding that Special Condition 7R brought Davis "within the scope of HRS § 291E–62 in that Davis was prohibited from operating a motor vehicle throughout the period of probation, and that constitute[d] a restriction on his license to operate a vehicle pursuant to HRS § 291E–61, for which Davis had entered a plea of guilty" on March 19, 2007.

The defense rested without presenting evidence. In closing argument, the State argued that it proved beyond a reasonable doubt that Davis was guilty of driving while his license was suspended or revoked for operating a motor vehicle under the influence of an intoxicant as a second offense. Officer Hayakawa was dispatched to a motor vehicle collision where he observed damage to Davis's vehicle. Davis admitted to Officer

9. HRS § 291E–61.5 states, in relevant part:

> (a) A person commits the offense of habitually operating a vehicle under the influence of an intoxicant if:
> (1) The person is a habitual operator of a vehicle under the influence of an intoxicant;
> . . . .
> (d) For a conviction under this section, the sentence shall be either:
> (1) An indeterminate term of imprisonment of five years; or
> (2) A term of probation of five years, with conditions to include:

> (A) Mandatory revocation of license and privilege to operate a vehicle for a period not less than one year but not more than five years[.]

10. HRS § 291E–62 stated, in relevant part:

> (b) Any person convicted of violating this section shall be sentenced as follows:
> . . . .
> (C) Revocation of license and privilege to operate a vehicle for an additional year[.]

11. Probation was not imposed in Count II.

Hayakawa that he was driving the vehicle, and he had provided the Officer his name, date of birth, and the last four digits of his social security number. This information was identical to that reflected on State's Exhibit 1.

The State maintained that Exhibit 1 demonstrated that Davis's license was restricted as a term of his probation when he was found guilty of violating HRS §§ 291E–61.5 and 291E–62. The State contended that Davis was aware of his probation terms, and therefore he recklessly disregarded the requirements of his probation by driving with a suspended or revoked license.

Davis countered that the evidence was insufficient to prove that his license suspension remained in place on the date of the incident on July 22, 2011. Davis argued that there was nothing provided by the driver's license bureau or the Administrative Driver's License Revocation Office about his license status on the date of the incident. There was also no evidence that after the March 19, 2007 judgment was issued, the terms and conditions of his probation were not modified or changed in any way.

Additionally, Davis contended that there was no evidence presented by the State that he actually received a copy of the terms and conditions of probation or that he was aware of those terms and conditions. Davis maintained that the State did not provide a witness to identify him as the person who appeared in court and had his license suspended or revoked on March 19, 2007. Davis asserted that the State failed to prove beyond a reasonable doubt that he was aware or should have been aware that his license was suspended or revoked, or that his license actually was suspended or revoked on March 19, 2007.

Finally, Davis asserted that there was no testimony to confirm that the accident that occurred on July 22, 2011 took place on a public way, street, road, or highway, as required under HRS § 291E–62.

In reply, the State argued that Officer Hayakawa testified that "the location of the violation was on Kamehameha Highway and Kuala Street, which is a public street, road, or highway in the City and County of Honolulu, State of Hawai'i." The State pointed out that the first page of Exhibit 1 contained language stating that copies of the Judgment of Conviction were mailed and delivered to all parties, which gave Davis notice through the attached terms and conditions of probation that he was restricted from driving a motor vehicle during the five years of probation. The State further argued that the Judgment of Conviction could not have been executed in circuit court without Davis's presence.

The district court "accept[ed] [O]fficer [Hayakawa's] testimony regarding obtaining information relevant to [Davis's] identity, which [was] corroborated by State's Exhibit 1," and found the officer's testimony to have been credible. The district court found that the State satisfied its burden of proof that Davis was guilty as charged. Sentence was imposed, and the district court judgment was filed.[12] Davis timely appealed.

## II.

On appeal to the ICA, Davis presented four points of error:

1. The State failed to adduce sufficient evidence to sustain the conviction.

2. The district court erred in admitting State's Exhibit 1 because it was not properly certified, and therefore not self-authenticating pursuant to HRE 902(4).

3. Double jeopardy precludes a retrial on the same charge.

4. Assuming arguendo that there is sufficient evidence to sustain the conviction, *State v. Nesmith* mandates a new trial.

### A.

In his first point of error, Davis argued that the State failed to adduce sufficient evidence to sustain a conviction under HRS § 291E–62(a)(1) because the State failed to prove "every element of the crime charged

12. On that same day, the district court filed a Notice of Entry of Judgment And/Or Order and Plea/Judgment indicating that Davis was convict-

ed of violating HRS §§ 291E–62(a)(1) and/or (2), (b)(1).

beyond a reasonable doubt." Davis presented five arguments in support of his first point of error.

First, Davis argued that the State failed to establish that the motor vehicle collision occurred on a public way, street, road, or highway pursuant to the statutory definitions. Officer Hayakawa testified that he responded to a motor vehicle collision and observed two vehicles pulled over on the shoulder of Kamehameha Highway. Davis maintained that the State failed to prove that Kamehameha Highway fell under the definition of "public road" or "public highway" because the State did not "establish that the area where the accident occurred was open to the public or "publicly maintained," or that the highway was built, acquired, or otherwise under the jurisdiction of the County or the State of Hawai'i."

Second, Davis argued the State failed to establish by satisfactory evidence that the "Terry Jay Davis" listed as the defendant on the Judgment of Conviction was connected to him. Davis asserted that the evidentiary record lacked any fingerprint evidence or physical description to link him to Exhibit 1. Additionally, Davis argued that the State demonstrated only that the last four digits of his social security number (SSN) matched the SSN on State's Exhibit 1. He maintained that the name "Terry Jay Davis" was not the same as "Terry J. Davis." However, Davis did concede that his birth date matched the birth date of "Terry Jay Davis" on Exhibit 1.

Third, Davis argued that even if Exhibit 1 established prior convictions under HRS §§ 291E–61.5 and 291E–62, the State failed to call any witnesses to attest to Davis's presence or identity at the March 19, 2007 hearing. Davis pointed out that the terms and conditions of probation attached to the Judgment of Conviction were "unsigned, unacknowledged, and undated." Davis argued that "the district court's assumption that he must have been present because a plea would not have been accepted, he would not have been sentenced . . . was insufficient."

Additionally, Davis argued that the State failed to establish that Davis was on proba-tion or that the terms and conditions of probation were in effect at the time of the incident on July 22, 2011. Neither HRS §§ 291E–61.5 nor 291E–62 "mandate[d] a five-year driver's license suspension."[13] Therefore, without evidence of a specific date in which the license revocation would become effective, any restriction on Davis's driver's license "may have been completed long before July 22, 2011" or modified by the court. Lastly, Davis argued that Exhibit 1 was insufficient to establish that he intentionally, knowingly, or recklessly operated a vehicle while his driver's license was suspended or revoked.

Fourth, Davis argued that the State failed to adduce sufficient evidence that his driver's license had been revoked, suspended, or restricted pursuant to any other statutory provision enumerated in HRS §§ 291E–62(a)(1) and/or (2).

Fifth, Davis argued that even if Exhibit 1 was properly admitted, the State failed to adduce sufficient evidence that he was convicted for violating HRS § 291E–62 within the requisite probationary time period or that he was the individual sentenced in court for a second offense of HRS § 291E–62 within a five-year period. Consequently, there was insufficient evidence to subject him to sentencing under HRS § 291E–62(b)(2).

In his second point of error, Davis argued that the district court erred in admitting Exhibit 1 into evidence because Exhibit 1 failed to comply with the self-authentication requirements under HRE Rule 902. The State was required to establish that the document was certified as correct by either the custodian of records or a person authorized to make such a certification. The seal on Exhibit 1 stated as follows:

> I do hereby certify that this is a full, true, and correct copy of the original file in this office.
> [Illegible Signature]
> Clerk, Circuit Court, First Circuit.

Davis argued that there was "no attestation that this [was] a seal, a public seal that

---

**13.** Under HRS § 291E–61.5, the mandatory driver's license suspension is for "not less than one year but not more than five years[.]" Under HRS § 291E–62, the driver's license suspension is for "an additional year."

[came] from an agency of the State of Hawai'i," and "[there was] no proof that [ the] signature [was] by the custodian or other person authorized to make certification." Davis contended that the district court's error denied him a right to a fair trial.

Davis asserted in his third point of error that the Double Jeopardy Clauses under article I, section 10 of the Hawai'i Constitution and the Fifth and Fourteenth Amendments of the United States Constitution preclude retrial because the State failed to adduce sufficient evidence to sustain the conviction under HRS § 291E–62(a)(1). Double jeopardy principles barred retrial "even where [ ] the initial charging document was defective."

In his fourth point of error, Davis argued that even if the ICA determined that the State did adduce sufficient evidence to support Davis's conviction, *State v. Nesmith*, 127 Hawai'i 48, 276 P.3d 617 (2012) required the ICA to vacate Davis's conviction and remand the matter for a new trial because the State failed to allege the required state of mind in the Oral Charge.

### B.

The State presented three arguments in its Answering Brief. First, the State conceded that Davis's conviction must be vacated and remanded for a retrial because the Oral Charge did not explicitly inform Davis of the requisite state of mind and because Davis made a timely pre-trial objection to the charge.

Second, the State argued that the district court did not err or abuse its discretion in admitting Exhibit 1 because the Judgment of Conviction was properly authenticated. The State pointed out that Exhibit 1 bore a seal signed and attested to by a clerk of the circuit court. The State asserted that Davis failed to offer any evidence that indicated that Exhibit 1 was not authentic.

Third, the State maintained that there was sufficient evidence adduced at trial to establish that Davis operated his truck on a public highway with a revoked license, as Davis had been previously convicted under HRS § 291E–62 within the previous five years, and his license was revoked as a result of that conviction.

The State argued that the section of Kamehameha Highway where Officer Hayakawa observed Davis was a "public highway." Courts "are *duty-bound* to take 'judicial notice' of municipal ordinances" which include the City and County of Honolulu Speed Schedules established by the Department of Transportation Services pursuant to the Revised Ordinances of Honolulu (ROH) § 15–7.2 (2012). The stretch of Kamehameha Highway at the intersection of Kuala Street where Davis's motor vehicle collision occurred was "[a]mong the public ways listed on page 7 of Schedule VII." Thus, the district court was required to take judicial notice that the portion of Kamehameha Highway located at the intersection of Kuala Street was a "public highway" under the definition of "public way, street, road, or highway" in HRS § 291E–1.

The State next argued that Exhibit 1 proved that Davis was convicted on March 19, 2007 of violating HRS § 291E–61.5 and HRS § 291E–62. Whenever probation is imposed pursuant to HRS § 291E–61.5(d)(2)(A), the probationary term is for five years, and there is a mandatory revocation of license and privilege to operate a vehicle "for a period not less than one year but not more than five years."

The State noted that Special Condition 7R in Exhibit 1 "prohibited [Davis] from operating a motor vehicle throughout the period of probation." Davis's "five-year term of probation continued through March 18, 2012, and Davis was found operating his truck on July 22, 2011" in violation of the terms and conditions of his probation. The district court judgment occurred less than five years after the March 19, 2007 Judgment of Conviction, and thus subjected Davis to sentencing pursuant to HRS § 291E–62(b)(2).

Additionally, the State argued that a sufficient foundation existed to establish that Davis was the same person convicted by the Judgment of Conviction. The date of birth and social security number that Officer Hayakawa obtained from Davis at the time of the accident matched the information recorded on the Judgment of Conviction. The State contended that "Davis adduced no evidence to contradict the reasonable inference that he was in fact the same person who was convict-

ed in the March 19, 2007 Judgment [of Conviction]."

### C.

The ICA concluded that the Oral Charge was defective for failing to allege the requisite *mens rea*, and the case should have been dismissed without prejudice pursuant to *Nesmith*, 127 Hawai'i 48, 276 P.3d 617. *State v. Davis*, No. CAAP–12–0000074, 130 Hawai'i 303, 2013 WL 4102403, at *3 (App. Aug. 14, 2013) (SDO).

The ICA held that it was not necessary to reach the sufficiency of the evidence or double jeopardy issues raised by Davis based on its interpretation of this court's ruling in *State v. Gonzalez*, 128 Hawai'i 314, 288 P.3d 788 (2012). The ICA noted that "where the charge did not contain the requisite state of mind, '*Nesmith* mandates dismissal without prejudice.' " *Davis*, 2013 WL 4102403, at *2 (quoting *Gonzalez*, 128 Hawai'i at 324, 288 P.3d at 798) (emphasis omitted). The ICA noted that the supreme court reached this conclusion even though the defendant had also challenged whether the State had "carried its burden of proof at trial." *Id.* The ICA also noted that the *Gonzalez* court reached the evidence question "only to provide guidance for the anticipated retrial on the same charge, and notwithstanding its determination that critical evidence was improperly admitted." *Id.* Consequently, "the court expected that a retrial on the charge was likely." *Id.* Thus, the ICA concluded: "*Gonzalez* suggests that, where a charge is defective for failing to allege the requisite *mens rea*, it is not necessary to reach the questions of sufficiency of the evidence and double jeopardy." *Id.*

The ICA ordered the district court judgment to be vacated, and the case remanded to the district court with instructions to dismiss the case without prejudice.

### D.

In his Application to this court, Davis sets forth the following contentions as the questions presented:

1. The ICA gravely erred in failing to address whether there was sufficient evidence to sustain the conviction and whether double jeopardy precludes retrial.

2. The ICA gravely erred in failing to hold that the district court erred in admitting Exhibit 1 into evidence.

3. The ICA gravely erred in failing to hold that there was insufficient evidence to sustain the conviction.

4. The ICA gravely erred in failing to hold that double jeopardy precluded another trial despite *State v. Nesmith*.

The Application reiterates arguments that Davis made in the Opening Brief, except as additionally noted.

In the first question presented, Davis argues that the ICA gravely erred in failing to address whether there was insufficient evidence to sustain a conviction against him for violating HRS §§ 291E–62(a)(1) and/or (2) because "the reviewing court is required to decide the sufficiency question, despite the fact that there may be other grounds for reversal that would not preclude retrial." "When a defendant challenging his conviction on appeal contends both that the trial was infected by error and that the evidence was constitutionally insufficient, the court may not ... ignore the sufficiency claim, reverse on grounds of trial error, and remand for retrial." Because the first trial has plainly ended, Davis asserts that "retrial is foreclosed by the Double Jeopardy Clause" notwithstanding a charging error, because the State "failed to adduce sufficient evidence to support the conviction in the first trial."

In his second question presented, Davis argues that the district court erred in admitting the Judgment of Conviction because it was not properly certified by the State, and it was not self-authenticating under HRE Rule 902(1). Davis argues that Exhibit 1 "constituted a public record that required additional foundation under HRE [Rule] 902(4), which the State failed to lay." For example, the State failed to provide evidence "indicating that the document was certified by an authorized custodian," and "[t]he stamp fail[ed] to indicate that [ ] Exhibit 1 was certified by the custodian of records." Additionally, the State failed to call a witness to properly certify and authenticate Exhibit 1.

In the third and fourth questions presented, Davis sets forth the same arguments that were made in the Opening Brief. The State did not file a response to the Application.

### III.

The four questions raised in the Application will be addressed in the order presented.

### A.

The first issue raises the question of whether an appellate court is required to review a defendant's insufficiency of evidence claim prior to vacating the defendant's conviction and remanding for a new trial based on a defective charge. The ICA held that Davis's case should have been dismissed without prejudice based on the faulty charge, but determined that it was not required to address Davis's argument that there was insufficient evidence to support his conviction and that double jeopardy therefore precluded a retrial on remand.

■ "We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard." *State v. Jenkins,* 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (quotation marks and citations omitted).

### 1.

The double jeopardy clauses of the Fifth Amendment of the United States Constitution and article I, section 10 of the Hawai'i Constitution provide that no person shall be subject for the same offense to be twice put in jeopardy. "Based upon these provisions, we have long recognized" that "[d]ouble jeopardy protects individuals against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." *State v. Rogan,* 91 Hawai'i 405, 416, 984 P.2d 1231, 1242 (1999) (internal quotation marks and citations omitted).

The U.S. Supreme Court first considered in detail "the double jeopardy implications of an appellate reversal" in *Ball v. United States,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). *Burks v. United States,* 437 U.S. 1, 13, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). In *Ball,* three defendants were tried together for murder in a jury trial. *Id.* at 663, 16 S.Ct. 1192. Two defendants were found guilty as charged in the indictment, and one defendant, Millard F. Ball, was found not guilty. *Id.* at 663–64, 16 S.Ct. 1192. On the first appeal by the guilty defendants, the Court held that the indictment was fatally defective and would not support a sentence for murder, and therefore reversed the judgments against the two defendants. *Id.* at 664–65, 16 S.Ct. 1192. On remand, the trial court dismissed the defective indictment, and a new indictment was returned against all three defendants. *Id.* at 665, 16 S.Ct. 1192. The jury then found all three defendants guilty of murder. *Id.* at 665–66, 16 S.Ct. 1192.

On the second appeal, the Court held that defendant Millard's "acquittal by the verdict of the jury could not be deprived of its legitimate effect by the subsequent reversal by this court of the judgment against the other defendants[.]" *Id.* at 670, 16 S.Ct. 1192. As to Millard's acquittal, "the court could take no other action than to order his discharge." *Id.* at 671, 16 S.Ct. 1192. The Court held that "the verdict of acquittal was final, and could not be reviewed, on error or otherwise, without putting him twice in jeopardy, and thereby violating the constitution." *Id.*

As to the other two defendants who had been convicted after the first trial, the Court held that their second trial was not barred based on former jeopardy, as "a defendant who procures a judgment against him upon an indictment to be set aside may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted." *Id.* at 672, 16 S.Ct. 1192.

Subsequently in *Burks,* the Court distinguished between the applicability of double jeopardy in cases setting aside convictions based on trial errors and those setting aside convictions based on the insufficiency of the evidence. 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1. In *Burks,* the defendant was convicted by jury trial. *Id.* at 2–3, 98 S.Ct. 2141. The defendant filed a motion for new trial,

arguing that the evidence was insufficient to support the verdict. *Id.* at 3, 98 S.Ct. 2141. The district court denied the motion. The court of appeals reversed the defendant's conviction based on the insufficiency of the evidence. *Id.* However, "rather than terminating the case against [the defendant]," the appellate court remanded to the district court "for a determination of whether a directed verdict of acquittal should be entered or a new trial ordered" and indicated that the district court "should choose the appropriate course 'from a balancing of the equities.'" *Id.* at 4, 98 S.Ct. 2141 (internal quotation marks in first quotation omitted). The appellate court "assumed it had the power to order this 'balancing' remedy by virtue of the fact that [the defendant] had explicitly requested a new trial." *Id.* at 5, 98 S.Ct. 2141. The *Burks* Court reversed the court of appeals and held that double jeopardy "precludes a second trial once the reviewing court has found the evidence legally insufficient," regardless of whether the defendant sought a new trial as a remedy. *Id.* at 17–18, 98 S.Ct. 2141.

The Court explained that the "Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials." *Id.* at 11, 98 S.Ct. 2141 (footnote omitted). "The Clause does not allow the State to make repeated attempts to convict an individual for an alleged offense, since the constitutional prohibition against double jeopardy was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Id.* (quoting *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)) (brackets, ellipsis, and quotation marks omitted).

The Court reasoned that "reversal for trial error … does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect[.]" *Id.* at 15, 98 S.Ct. 2141. In those situations, the defendant has

a "strong interest in obtaining a fair readjudication of his [or her] guilt free from error," and "society maintains a valid concern for insuring that the guilty are punished." *Id.*

However, where the defendant's conviction is overturned "due to a failure of proof at trial," the prosecution has already been "given one fair opportunity to offer whatever proof it could assemble." *Id.* at 16, 98 S.Ct. 2141. "[S]uch an appellate reversal means that the government's case was so lacking that it should not have even been submitted to the jury." *Id.* The Court thus reasoned that because reviewing courts "afford absolute finality to a jury's verdict of acquittal— no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty." *Id.* at 16, 98 S.Ct. 2141.

In *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984), the Court upheld Massachusetts' two-tier system in which a defendant charged with certain minor crimes has the option of electing either a bench trial or jury trial, and if convicted through a bench trial, has an absolute right to a trial de novo before a jury. *Id.* at 296–97, 104 S.Ct. 1805. The Court held that a defendant who was convicted after electing a bench trial could be retried de novo by jury "without any judicial determination of the sufficiency of the evidence at his prior bench trial." *Id.* at 303, 104 S.Ct. 1805. A majority of the Court found that its decision in *Burks* did not "mandate[ ] the conclusion that a trial de novo is barred by the Double Jeopardy Clause if the evidence presented at the bench trial was insufficient to support a finding of guilt." *Id.* at 306, 104 S.Ct. 1805. The Court explained that the State was not "attempting to impose multiple punishments for a single offense" or "making another attempt to convict [the defendant] after acquittal." Id. at 306, 466 U.S. 294. Rather, the State was "satisfied with the results of the bench trial and would have abided the results of a jury trial had [the defendant] taken that initial course." *Id.* Additionally, under the two-tier

system, jeopardy was not terminated through an appellate determination that the evidence was insufficient to support a conviction; rather, the second de novo trial was "part of a single continuous course of judicial proceedings during which, sooner or later, a defendant receives more—rather than less—of the process normally extended to criminal defendants[.]" *Id.* at 309, 104 S.Ct. 1805 (citation omitted). The Court further noted that the two-tier system benefitted both defendants and the State, and did not "constitute 'governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect, ... even when a defendant convicted at the first tier claims insufficiency of the evidence." *Id.* at 310, 104 S.Ct. 1805 (quoting *United States v. Scott,* 437 U.S. 82, 91, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978)). Accordingly, double jeopardy did not bar reprosecution of the defendant under the two-tier system. *Id.* at 310–13, 104 S.Ct. 1805.

The concurring opinion in *Justices of Boston* read *Burks* to hold that an appellate court must review a defendant's sufficiency of the evidence claim before vacating and remanding for a new trial based on a trial error. *Id.* at 320–22, 104 S.Ct. 1805 (Brennan, J., concurring, with Marshall, J., joining). The concurrence explained that the *Burks* decision "is not merely an application of an abstract concept of continuing jeopardy," but "derives from perhaps the most fundamental rule in the history of double jeopardy jurisprudence—that a verdict of acquittal cannot be reviewed, on error or otherwise, without putting a defendant twice in jeopardy, and thereby violating the Constitution." *Id.* at 318, 104 S.Ct. 1805 (quotation marks, brackets, ellipsis and citation omitted) (emphasis added). Although the majority was "correct in stating that a prerequisite to a successful *Burks* claim is a 'legal judgment' rendered at some point that the evidence was insufficient," *id.* at 319, 104 S.Ct. 1805, the concurrence noted that "[t]he fact that a trial has ended does not ... complete the constitutional inquiry." *Id.* at 321, 104 S.Ct. 1805. Rather, once it has been determined that a trial has ended as a matter of constitutional law, the concurrence stated that "a court considering a double jeopardy claim must consider the separate question of whether a second trial would violate the Constitution."

*Id.* "For example, when a defendant challenging his conviction on appeal contends both that the trial was infected by error and that the evidence was constitutionally insufficient, the court may not, consistent with the rule of [Burks], ignore the sufficiency claim, reverse on grounds of trial error, and remand for retrial." *Id.* at 321–22, 104 S.Ct. 1805 (emphasis added). "Because the first trial has plainly ended, 'retrial is foreclosed by the Double Jeopardy Clause if the evidence fails to satisfy the constitutional standard for sufficiency. Hence, the sufficiency issue cannot be avoided; if retrial is to be had, the evidence must be found to be legally sufficient ... to sustain the jury verdict.'" *Id.* (quoting *Tibbs v. Florida,* 457 U.S. 31, 51, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982) (White, J., dissenting, joined by Brennan, Marshall, and Blackmun, JJ.)) (brackets omitted).

Two months after *Justices of Boston,* the Court decided *Richardson v. United States,* 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). In *Richardson,* the jury acquitted the defendant of several counts but was unable to agree as to other counts. *Id.* at 318, 104 S.Ct. 3081. The district court declared a mistrial as to the latter counts, and set them for retrial. *Id.* The defendant moved to bar the retrial based on the Double Jeopardy Clause because sufficient evidence to support a conviction on the remaining counts had not been presented by the government during the first trial. *Id.* The district court denied the motion. *Id.* The *Richardson* Court first held that the district court's order denying the defendant's double jeopardy claim was appealable under the federal approach to the collateral order doctrine. *Id.* at 321–22, 104 S.Ct. 3081.

On the merits of the double jeopardy claim, the *Richardson* Court determined that "[w]here, as here, there has been only a mistrial resulting from a hung jury, *Burks* simply does not require that an appellate court rule on the sufficiency of the evidence because retrial might be barred by the Double Jeopardy Clause." *Id.* at 323, 104 S.Ct. 3081. The Court reconciled its decision with *Burks* by stating that "the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an

acquittal, which terminates the original jeopardy." *Id.* at 325, 104 S.Ct. 3081 (citing *Justices of Boston,* 466 U.S. 294, 104 S.Ct. 1805). A mistrial is not an event that terminates jeopardy. *Id.* The Court reiterated, "Our holding in *Burks* established only that an appellate court's finding of insufficient evidence to convict on appeal from a judgment of conviction is for double jeopardy purposes, the equivalent of an acquittal; it obviously did not establish ... that a hung jury is the equivalent of an acquittal." *Id.* Thus, regardless of the sufficiency of the evidence at a defendant's first mistrial, the defendant has no valid double jeopardy claim to prevent retrial. *Id.* at 326, 104 S.Ct. 3081.

The federal courts of appeals appear to be divided on the question of whether *Burks* and *Richardson* require an appellate court to review the sufficiency of the evidence before ordering a retrial based on a trial error, "as well as on the issue of whether sufficiency review before retrial is prudentially sound or constitutionally required." *Hoffler v. Bezio,* 726 F.3d 144, 161 (2d Cir.2013). Compare *Palmer v. Grammer,* 863 F.2d 588, 592 (8th Cir.1988) ("it is well-established that *Burks* does not allow an appellate court to reverse for trial error and remand for retrial while ignoring a claim of insufficient evidence") (citing *Justices of Boston,* 466 U.S. at 321–22, 104 S.Ct. 1805 (Brennan, J., concurring)); *Vogel v. Pennsylvania,* 790 F.2d 368, 376 (3d Cir.1986) ("when a defendant raises an insufficiency of evidence contention that the trial court finds unnecessary to address, a court subsequently presented with a double jeopardy argument must address and resolve that issue"); *United States v. Wiles,* 106 F.3d 1516, 1518 (10th Cir.1997) ("this circuit has held that when we reverse on appeal because of a procedural error at trial and remand for a new trial, the prohibition against double jeopardy requires us to address a defendant's claim that the evidence presented at trial on the reversed count was insufficient"), with *Foxworth v. Maloney,* 515 F.3d 1, 4 (1st Cir.2008) (adopting prudential rule requiring review of sufficiency challenges before ordering retrial); *Patterson v. Haskins,* 470 F.3d 645, 659 (6th Cir.2006) ("this court's longstanding prudential practice of reviewing the sufficiency of the evidence despite reversing a conviction on other grounds was not under-

mined by the Supreme Court's decision in *Richardson* "); *United States v. Douglas,* 874 F.2d 1145, 1149–51 (7th Cir.1989) (declining to hold that double jeopardy requires the court to review sufficiency of evidence when defendant raises the issue on appeal, but adopting "policy ... of routinely addressing evidentiary sufficiency in criminal cases when a defendant presents the issue on appeal"), abrogated on other grounds by *United States v. Durrive,* 902 F.2d 1221 (7th Cir.1990).

At a minimum, federal courts of appeals are unanimous in concluding that sufficiency review before ordering retrial "is warranted ... as a matter of prudent policy." *Hoffler,* 726 F.3d at 161–62. For example, federal courts have observed that "a sufficient rationale lies in a proper 'concern for the preservation of scarce and costly resources.' " *Id.* at 162 (quoting *Douglas,* 874 F.2d at 1150). "All retrials involve duplicative efforts by judges, juries, prosecutors and defendants, at considerable expense in time and money to all, and in anxiety to the defendant. If in fact insufficient evidence is presented at a first trial, a retrial, on any basis, ordinarily may be expected to be a wasted endeavor." *Douglas,* 874 F.2d at 1150. *See Hoffler,* 726 F.3d at 162 ("[I]f a reviewing court were to order a new trial without addressing a sufficiency challenge, it could result in the futility of a second conviction that would have to be reversed in a second appeal.") (quotation marks and citation omitted).

2.

Consistent with the analysis in *Burks* and with Justice Brennan's concurrence in *Justices of Boston,* this court has consistently examined the sufficiency of the evidence before determining whether to remand for a new trial based on a trial error or whether to enter a judgment of acquittal. *See State v. Kaulia,* 128 Hawai'i 479, 291 P.3d 377 (2013) (vacating conviction and remanding for new trial based on district court's lack of jurisdiction to proceed to trial absent filing of an amended complaint with correct charge, and examining sufficiency of the evidence); *State v. Getz,* 131 Hawai'i 19, 313 P.3d 708 (2013) (vacating conviction and remanding for new trial based on trial court's lack of specific

unanimity instruction, and examining sufficiency of the evidence); *State v. Arceo*, 84 Hawai'i 1, 33 n. 40, 928 P.2d 843, 875 n. 40 (1996) ("Because our disposition of the present appeal is grounded in 'trial error' and the evidence adduced at trial was clearly sufficient to support Arceo's convictions, double jeopardy concerns are not implicated by a new trial"); *State v. Balanza*, 93 Hawai'i 279, 1 P.3d 281 (2000) (reversing defendant's conviction for promoting a dangerous drug in the second degree and remanding the case with instructions to enter a judgment of acquittal, where the trial court erred by not instructing the jury on the procuring agent defense and there was insufficient evidence to support the conviction); *State v. Silver*, 125 Hawai'i 1, 249 P.3d 1141 (2011) (examining sufficiency of the evidence claims despite other alleged trial errors and reversing conviction on a count for insufficiency of the evidence); *State v. Bailey*, 126 Hawai'i 383, 271 P.3d 1142 (2012) (holding that circuit court abused discretion in denying motion for mistrial because juror's comments were not harmless beyond a reasonable doubt, and also determining that the evidence was sufficient to support each of the defendant's convictions, and accordingly remanding for a new trial). *See also State v. Bannister*, 60 Haw. 658, 594 P.2d 133 (1979) (holding that State's evidence was insufficient to support conviction because key testimony was inadmissible, sua sponte addressing double jeopardy issue, and remanding with instructions to enter a judgment of acquittal because of insufficiency of evidence).

In *State v. Malufau*, 80 Hawai'i 126, 132, 906 P.2d 612, 618 (1995) (*Malufau* I), *vacated in part* 80 Hawai'i 126, 906 P.2d 612 (*Malufau II*), the court held that "challenges to the sufficiency of the evidence must always be decided on appeal" because "the Double Jeopardy Clause bars retrial of a defendant once a reviewing court has found the evidence at trial to be legally insufficient to support the conviction." (Emphasis added) (internal quotation marks and citation omitted). The exception to this rule is that the prosecution is permitted to retry the defendant on a lesser-included offense without offending the double jeopardy clause. *Malufau II*, 80 Hawai'i at 134–35, 906 P.2d at 620–21.

In *Malufau I*, the court vacated the defendant's conviction of assault in the first degree based on the circuit court's erroneous admission of irrelevant testimony that had a "substantial influence" on the jury's verdict. 80 Hawai'i at 132, 906 P.2d at 618. The court held that because it was vacating the conviction, it was obligated to address the defendant's argument regarding the sufficiency of the evidence. *Id.* The court ultimately concluded that there was insufficient evidence to support the conviction for assault in the first degree and that the prosecution was therefore not permitted to retry him on that charge on remand, but could retry him on the included offenses of assault in the second and third degree. *Id.* at 133–34, 906 P.2d at 619–20.

In *State v. Kalaola*, 124 Hawai'i 43, 46, 237 P.3d 1109, 1112 (2010), the defendant was found guilty by a jury of committing the offense of failure to disperse. On appeal, the ICA concluded that the trial court failed to properly instruct the jury regarding the material elements for the charged offense. *State v. Kalaola*, No. 29163, 2009 WL 1507291, at *1 (App. May 29, 2009) (SDO). The ICA vacated the conviction based on the trial error and remanded the case for a new trial. *Id.* at *2–3. The only question addressed by this court on application for writ of certiorari was whether the conviction should have been reversed rather than remanded for a new trial because the conviction was not supported by sufficient evidence. *Kalaola*, 124 Hawai'i at 46, 237 P.3d at 1112.

This court held that sufficient evidence was presented to establish that the defendant failed to disperse from the first floor of the subject building, but that there was insufficient evidence to establish that he failed to disperse from the second floor. *Id.* Accordingly, the court held that the double jeopardy clause of the Hawai'i Constitution did not bar retrial with regard to his alleged failure to disperse from the first floor, given that there was clearly sufficient evidence supporting the conviction. *Id.* The court vacated the defendant's conviction and remanded for a new trial "with regard to the events that transpired on the first floor." *Id.* Accordingly, the basis for this court's acceptance of certiorari

in *Kalaola,* to examine the sufficiency of the evidence although it was undisputed that the circuit court had committed a trial error, indicates that a reviewing court finding trial error must also examine the defendant's sufficiency of the evidence claim because of double jeopardy concerns.

Moreover, in determining the sufficiency issue, the *Kalaola* court definitively stated, "It is well-settled that, even where this court finds trial error, 'challenges to the sufficiency of the evidence must always be decided on appeal. ... This is because the double jeopardy clause bars retrial of a defendant once a reviewing court has found the evidence at trial to be legally insufficient to support a conviction.' " [14] *Id.* at 59, 237 P.3d at 1125 (emphasis added) (brackets omitted) (quoting *Malufau I,* 80 Hawai'i at 132, 906 P.2d at 618) (quotation marks omitted).

In the specific context of defective charges, in *State v. Elliott,* the court reversed the defendant's conviction for resisting arrest upon finding that the charge was fatally defective for failure to allege the requisite mens rea, rather than vacating the conviction and remanding for a new trial. 77 Hawai'i 309, 884 P.2d 372 (1994). The court also found that a second charge against the defendant, of assault against a police officer, was defective because it could not be reasonably construed to allege that offense. *Id.* at 312–13, 884 P.2d at 375–76. However, the court found that the defective count purporting to charge assault against a police officer actually charged the lesser-included offense of assault in the third degree, and all of the essential elements of the latter offense were proven at trial. *Id.* at 313, 884 P.2d at 376. Thus, rather than reflexively vacating and remanding for a new trial based on a defec-

tive charge, the court examined the sufficiency of the evidence and found that there was enough evidence to support the lesser-included offense. Because the charge was only faulty as to the greater offense, the court remanded the case for entry of a judgment of conviction as to the lesser included offense of assault in the third degree and for appropriate resentencing. *Id.*

Finally, this court has examined the defendant's sufficiency of the evidence claim prior to remand for a violation of the speedy trial rule under Hawai'i Rules of Penal Procedure (HRPP) Rule 48.[15] In *State v. Jackson,* 81 Hawai'i 39, 912 P.2d 71 (1996), the court held that the trial court erred in denying the defendant's HRPP Rule 48 motion to dismiss. *Id.* at 51–52, 912 P.2d at 83–84. Based on this error, the court vacated the defendant's conviction and remanded for entry of an order dismissing the charges against him, "with or without prejudice, in the circuit court's discretion." [16] *Id.* at 54–55, 912 P.2d at 86–87. Despite its disposition, the court extensively examined the defendant's insufficiency of evidence claim and held that "substantial evidence was presented to support [the defendant's] convictions of sexual assault in the second degree and sexual assault in the fourth degree." *Id.* at 46, 912 P.2d at 78.

Justice Levinson wrote in his concurring opinion that "[b]ecause [he] agree[d] with the majority's holding ... that [the defendant's] convictions were supported by substantial evidence, a dismissal of the charges without prejudice and a subsequent reinstatement of them would not compromise [the defendant's] constitutional right against double jeopardy." *Id.* at 55 n. 1, 912 P.2d at 87 n. 1 (Levinson,

14. A defective or faulty indictment or charge is a "trial error." *See Burks,* 437 U.S. at 14, 98 S.Ct. 2141 ("The reversal in *Ball* was therefore based not on insufficiency of evidence but rather on trial error, i.e., failure to dismiss a faulty indictment."); *Kalaola,* 124 Hawai'i at 52, 237 P.3d at 1118 ("[T]he double jeopardy clause ... imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his conviction set aside, for reasons other than insufficiency of the evidence. As set forth below, such reasons are typically referred to as 'trial error.' " (Quotation marks, brackets and citations omitted)).

15. HRPP Rule 48(b)(1) (2000) generally provides that "the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months" from the date of arrest if bail is set or from the filing of the charge, whichever is sooner.

16. The court explained that if an appellant demonstrates that his or her constitutional right to a speedy trial was violated (as opposed to the statutory right), then the appellant would be entitled to have his or her convictions vacated and the charges dismissed with prejudice. *Id.* at 54, 912 P.2d at 86.

J., concurring) (citing *Malufau I*, 80 Hawai'i at 135, 906 P.2d at 621). The majority opinion did not disagree with this characterization of its sufficiency of the evidence analysis.

The fact that the *Jackson* court examined the sufficiency of the evidence prior to remanding the case to the district court is instructive, as a motion to dismiss based on a HRPP Rule 48 violation is similar to a motion to dismiss based on a defective charge for omission of mens rea. Both involve situations where the trial court fails to dismiss a charge prior to trial, the case then proceeds to trial, and following appeal, the trial court is held to have erroneously denied the pretrial motion to dismiss the charge.

### 3.

In this case, the ICA, after holding that Davis's case should have been dismissed without prejudice based on the defective charge, held that it need not address Davis's argument that there was insufficient evidence to support his conviction and that double jeopardy therefore precluded a retrial on the same charge. The ICA held that pursuant to *Gonzalez*, 128 Hawai'i 314, 288 P.3d 788, and *Nesmith*, 127 Hawai'i 48, 276 P.3d 617, dismissal without prejudice is mandated where the charge failed to allege the requisite state of mind, regardless of whether the defendant has also alleged that the conviction was not supported by sufficient evidence.

However, neither *Nesmith* nor *Gonzalez* specifically addressed the question of whether double jeopardy requires a reviewing court to address a claim of insufficiency of evidence when it remands for a new trial based on a separate trial error. In *Nesmith*, the court held in a consolidated opinion involving two defendants that mens rea must be alleged for a HRS § 291E61(a)(1) (2007) charge of operating a vehicle under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties, but not for a HRS § 291E–61(a)(3) (2007) charge of operating a vehicle under the influence of .08 or more grams of alcohol per two hundred ten liters of breath. 127 Hawai'i at 50, 276 P.3d at 619. The court held that the latter (a)(3) offense is an "absolute liability offense for which no mens rea need be alleged or proven." *Id.* at 61, 276 P.3d at 630. The district court had adjudged the defendants guilty of violating both subsections, each of which can serve as the basis for a conviction under the statute. *Id.* The *Nesmith* court held that "insofar as the (a)(3) charge was sufficient, <u>and insofar as neither [defendant] challenge[d] the sufficiency of the evidence as to that basis, each's conviction still stands.</u>" *Id.* (emphasis added).

Subsequently in *Gonzalez*, the court held that an excessive speeding charge against the defendant was defective because it failed to allege the requisite state of mind. 128 Hawai'i at 315, 288 P.3d at 789. As a result, the court vacated the conviction and ordered the charge dismissed without prejudice. *Id.* at 327, 288 P.3d at 801. The court explained, "Because the charge here did not contain the requisite state of mind, as the State concedes, *Nesmith* mandates dismissal without prejudice." 128 Hawai'i at 324, 288 P.3d at 798.

The *Gonzalez* court then addressed the defendant's second point of error, that "[t]he trial court erred in finding that the State put forth a prima facie case and receiving evidence of the laser gun speed reading because the State failed to lay a sufficient foundation for the speed reading taken by the laser gun." *Id.* at 316–17, 288 P.3d at 790–91. The court explained that it was addressing this argument "[d]ue to the likelihood of retrial on remand" and "to prevent further error." *Id.* at 324, 288 P.3d at 798. However, the propriety of a remand based on a violation of double jeopardy was not directly challenged by the defendant, apparently because of the defendant's contention that the trial court lacked subject matter jurisdiction over the case because of the faulty charge.

Most recently in *State v. Apollonio*, 130 Hawai'i 353, 311 P.3d 676 (2013), the court again held that the State's excessive speeding charge omitted the requisite state of mind, and that the charge must therefore be dismissed without prejudice. *Id.* at 358–59, 311 P.3d at 681–82. Consistent with *Gonzalez*, the court addressed the defendant's second argument that the State failed to lay an adequate foundation for the introduction of the speed reading from the laser gun, in order "to prevent future error" "[d]ue to the likelihood of retrial." *Id.* at 359, 311 P.3d at

682. The *Apollonio* defendant also did not directly challenge the sufficiency of the evidence based on double jeopardy principles. *State v. Wheeler*, 121 Hawai'i 383, 385–86, 219 P.3d 1170, 1172–73 (2009) (affirming ICA's decision to vacate and remand with instructions to dismiss without prejudice based on defective charge).

### 4.

This case, unlike *Nesmith*, *Gonzalez* and *Apollonio*, squarely raises the issue of whether, when a defendant expressly challenges his or her conviction based on a fatally defective charge and based on insufficient evidence, a reviewing court may ignore the sufficiency claim, vacate based on the defective charge, and remand for a new trial.

Although the federal courts are divided on the issue of whether double jeopardy requires a reviewing court to examine a defendant's sufficiency of the evidence claim prior to remanding for retrial based on a trial error, "we are not bound to give provisions of the Hawai'i Constitution the same interpretations as those given under the United States Constitution." *State v. Lessary*, 75 Haw. 446, 453, 865 P.2d 150, 154 (1994). "We have often interpreted our double jeopardy clause to provide broader protections than the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution where the federal interpretation did not adequately preserve the rights and interests sought to be protected." *Rogan*, 91 Hawai'i at 423, 984 P.2d at 1249 (citations omitted).

Hawai'i courts have been consistent in examining the sufficiency of the evidence before determining whether to remand for a new trial based on a trial error or whether to enter a judgment of acquittal. This court's analysis has been grounded in article I, section 10 of the Hawai'i Constitution. In *Kalaola*, the court expressly stated that even where the court finds trial error, challenges to the sufficiency of the evidence must always be decided on appeal because the double jeopardy clause bars retrial of a defendant once a reviewing court has found the evidence at trial to be legally insufficient to support a conviction. 124 Hawai'i at 59, 237 P.3d at 1126.

Furthermore, any other result would be in contradiction to the purposes of the double jeopardy clause. The double jeopardy clause protects both defendants' interests and societal interests. *Rogan*, 91 Hawai'i at 416, 984 P.2d at 1242. With respect to defendants' interests, "multiple prosecutions seriously disrupt a defendant's personal life during trial and create a potential for governmental harassment of the defendant." *Id.* Additionally, "repeated prosecutions enhance the likelihood that an innocent defendant may be convicted." *Id.* On the other hand, society has an interest in "the right to one full and fair opportunity to prove a defendant's guilt." *Id.* at 417, 984 P.2d at 1243.

As explained by the *Burks* Court, in a case where the defendant's conviction is overturned based on the insufficiency of the evidence, the prosecution has already "been given one fair opportunity to offer whatever proof it could assemble." 437 U.S. at 16, 98 S.Ct. 2141. An appellate reversal based on insufficient evidence "means that the government's case was so lacking that it should not have even been submitted to the jury." *Burks*, 437 U.S. at 16, 98 S.Ct. 2141 (emphasis added). "In other words, 'a reversal on the insufficiency of the evidence is the constitutional equivalent of an acquittal' barring retrial under the Double Jeopardy Clause." *Douglas*, 874 F.2d at 1149–50 (ellipsis omitted) (quoting *Webster v. Duckworth*, 767 F.2d 1206, 1214 (7th Cir.1985)). "[I]t is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty." *Burks*, 437 U.S. at 16, 98 S.Ct. 2141.

These reasons for prohibiting a second trial under the double jeopardy clause where an appellate court finds that the evidence adduced at trial was insufficient as a matter of law are equally applicable in cases where there are other bases for reversing conviction, such as a defective charge. If double jeopardy prohibits a second trial based on the insufficiency of the evidence, then there is no reason that the double jeopardy clause should permit the government a second opportunity to supply the evidence it failed to produce in the first trial in cases where the

appellate court finds that the State's case was both brought upon a fatally defective charge and was insufficient as a matter of law.

The defective charge would not have affected the State's "fair opportunity to offer whatever proof it could assemble." *See id.* at 16, 98 S.Ct. 2141. In other words, "[t]his is not a case in which the trial error leading to reversal may have prejudiced the prosecution." *United States v. Marolda,* 648 F.2d 623, 624 (9th Cir.1981) (prejudicial variance between the offense as charged in the indictment and that defined by the court's instructions required reversal but was not the type of trial error that may have prejudiced prosecution, and because evidence was insufficient at first trial, defendant's motion to dismiss on double jeopardy grounds should have been granted). Accordingly, the general rule, that "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding," should apply. *Burks,* 437 U.S. at 11, 98 S.Ct. 2141.

Therefore, if it is found that the State failed to provide sufficient evidence and that no jury could have properly returned a verdict of guilty, then double jeopardy should preclude a retrial based on the defective charge.

The alternative, in which the appellate court would remand for a second trial based on a defective charge without reviewing the defendant's sufficiency claim, is problematic for several reasons. First, if a defendant raises two points of error, one of which is insufficiency of the evidence, then a different result could occur depending on which error the appellate court decided to consider first, or which error the court decided was dispositive. The defendant's entitlement to the protections of the double jeopardy clause would then be wholly dependent on the appellate court's inclinations.

Second, a defendant who was acquitted would be in a better position than a defendant who was convicted through a trial in which the State produced insufficient evidence as a matter of law, even though an acquittal and insufficient evidence are essentially equivalent for constitutional purposes.

*See Lockhart v. Nelson,* 488 U.S. 33, 39, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988) (*"Burks* was based on the view that an appellate court's reversal for insufficiency of the evidence is in effect a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal[.]"). The acquitted defendant would be absolutely protected from retrial by the double jeopardy clause, while the convicted defendant would be subject to retrial as long as there was a reversible trial error. This difference would be based on pure fortuity, in one case the defendant was acquitted based on the insufficiency of the evidence and in the other case the trial court erred by permitting the government's case to be submitted to the jury.

Third, a defendant would be penalized because of the State's multiple errors. If there was no other trial error raised on appeal, then a defendant who had been convicted despite insufficient evidence could not be retried because the appellate court must decide the insufficiency issue pursuant to *Burks.* However, the defendant who raises multiple errors, including a valid insufficiency of the evidence claim, is penalized because the appellate court can vacate and remand for a new trial based on the trial error and completely ignore the insufficiency claim.

Such a result is completely contrary to the purpose of the double jeopardy clause, "to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Burks,* 437 U.S. at 11, 98 S.Ct. 2141 (internal quotations and citations omitted). The government should not be afforded "an opportunity for the proverbial 'second bite at the apple,'" *id.* at 17, 98 S.Ct. 2141, where the government's case was insufficient as a matter of law and should never have been submitted to the jury, simply because the government also erred in charging the defendant with a defective charge. *See People v. Barrett,* 1 Johns. 66, 74 (N.Y.Sup.Ct.1806) (Livingston, J., dissenting) ("[S]uppose an acquittal to take place, the prosecutor, if he be dissatisfied, and bent on conviction, has nothing to do but to tell the court that his own indictment was good for nothing; that it has

no venue, or is deficient in other particulars, and that, therefore, he has a right to a second chance of convicting the prisoner[.]").

As stated, although federal courts disagree on whether a sufficiency review is constitutionally required when ordering a retrial based on a trial error, all federal courts have concluded that sufficiency review is warranted at least minimally "as a matter of prudent policy." *Hoffler*, 726 F.3d at 161–62. The long-standing federal practice of undertaking a sufficiency review demonstrates the concern that retrials involve "considerable expense in time and money" to all parties involved, and "in anxiety to the defendant." *Douglas*, 874 F.2d at 1150. "If in fact insufficient evidence [was] presented at a first trial, a retrial, on any basis, ordinarily may be expected to be a wasted endeavor." *Id.* Thus, it is in the interest of the court, juries, prosecutors, and defendants to determine on review whether the State's evidence was insufficient as a matter of law before remanding for a new trial, notwithstanding the existence of a trial error such as a faulty charge.

■ Accordingly, based on this court's precedent construing the double jeopardy clause of the Hawaiʻi Constitution, the purposes of the double jeopardy clause, and policy reasons, a reviewing court is required under article I, section 10 of the Hawaiʻi Constitution to address a defendant's express claim of insufficiency of the evidence prior to remanding for a new trial based on a defective charge.

### B.

■ The second question presented is whether the ICA gravely erred in failing to hold that the district court erroneously admitted Exhibit 1 into evidence as a self-authenticating document.

Davis contends that the district court erred in admitting Exhibit 1 because it was not properly certified as correct by a custodian of records or a person authorized to make such a certification, and therefore it was not self-authenticating under HRE Rule 902(1). Davis maintains that pursuant to HRE Rule 902(4), Exhibit 1 constituted a "public record" that required additional foundation for authentication, which the State failed to provide. Davis notes that the certification on

Exhibit 1 included an illegible signature of the circuit court clerk, and the State failed to establish through a witness or other evidence that the signature on Exhibit 1 belonged to a person authorized to make the certification pursuant to HRE Rule 902(4).

HRE Rule 902 states, in relevant part:

Extrinsic evidence of authenticating as a condition precedent to admissibility is not required with respect to the following:

(1) Domestic public documents under seal. A document bearing a seal purporting to be that of the United States, or of any state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

. . . .

(4) Certified copies of public records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) or complying with any statute or rule prescribed by the supreme court.

(Emphases added).

Under our law, "[t]he clerks of the supreme, intermediate appellate court, circuit, and district courts shall have the custody of all records, books, papers, moneys, exhibits, and other things pertaining to their respective courts." HRS § 606–4 (1993) (emphasis added). Additionally, "[t]he clerks of the courts of record may issue process, administer oaths, take depositions, and perform all other duties pertaining to their office." HRS § 606–8 (1993). A clerk must also "attend and record the proceedings at all sittings of courts of record." HRS § 606–8.

In this case, Exhibit 1 bears an impressed seal of the circuit court in compliance with HRE Rule 902(1), and contains the signature of the court clerk of the circuit court. As noted, court clerks "have the custody of all

records, ... exhibits, and other things pertaining to their respective courts" and may "perform all other duties pertaining to their office." HRS §§ 606–4, 606–8. In accordance with HRE Rule 902(1) and HRS § 606–4, the court clerk of the circuit court was a "custodian or other person authorized to make the certification" of the Judgment of Conviction, which was filed in a public office as required by law.

The certification affixed to Exhibit 1 states: "I do hereby certify that this is a full, true, and correct copy of the document on file in this office." The signature line of the certification below the clerk's signature states: "Clerk, Circuit Court, First Circuit." Clearly, a duty of the clerk is to certify copies of documents filed and retained in the clerk's office as full, true, and correct.

Thus, Exhibit 1 met the requirements of a self-authenticating document under HRE Rule 902(1) and (4), based upon the seal, certification, and attestation of the court clerk acting as the custodian authorized to certify that Exhibit 1 was a full, true, and correct copy of the Judgment of Conviction.

## C.

■ In his third question, Davis contends that the ICA gravely erred in failing to hold that there was insufficient evidence to sustain the conviction on three grounds. First, Davis contends that the State failed to establish that he operated a vehicle on a "public way, street, or highway" because the State did not prove that the location of the incident on the shoulder of Kamehameha Highway was a "true location open to the public or that the highway was built, acquired, or otherwise under the jurisdiction of the [City and County of Honolulu] or the State of Hawai'i."

The City and County Of Honolulu Speed Schedules were established by the Department of Transportation Services pursuant to the Revised Ordinances of Honolulu § 15–7.2 (1990).[17] Schedule VII [18] lists streets and portions thereof as "public ways" [19] governed by the ordinance. Among the "public ways" listed in Schedule VII is "KAMEHAMEHA HWY., from a pt. 500' Honolulu side of Plantation Dr. intx. through Wahiawa Interchange to a pt. 750' Wahiawa of Lumiaina S. intx." *See* Schedule VII.

**17.** Although not applicable to this case, ROH § 15–7.2 provides that "[n]o person shall drive a vehicle on a *public highway or street* at a speed in excess of the following speed limit zones established or hereafter established by ordinance of the city council." (Emphasis added).

ROH § 15–7.2(d) establishes a speed limit of 35 miles per hour "[o]n those streets or portions thereof described in Schedule VII attached to the ordinance codified in this section and made part hereof...."

**18.** Table 15.0 on page 2 of ROH "Chapter 15 Traffic Code" provides a table that shows the corresponding schedule for each section of the traffic note. The Editor's Note on the bottom of page 2 states that "[t]he schedules referred to in this table are on file with the office of the city and county clerk and the department of transportation services, City and County of Honolulu, and are available for examination by the general public during reasonable hours."

**19.** Under HRS § 291E–1 (2007), a "[p]ublic way, street, road, or highway" includes:

(1) The entire width, including berm or shoulder, of every road, alley, street, way, right of way, lane, trail, highway, or bridge;
(2) A parking lot, when any part thereof is open for use by the public or to which the public is invited for entertainment or business purposes;
(3) Any bicycle lane, bicycle path, bicycle route, bikeway, controlled-access highway, laned roadway, roadway, or street, as defined in section 291C–1; or
(4) Any public highway, as defined in section 264–1.
According to HRS § 264–1 (Supp.2011), a "public highway" includes:
(a) All roads, alleys, streets, ways, lanes, bikeways, bridges, and all other real property highway related interests in the State, opened, laid out, subdivided, consolidated, and acquired and built by the government are declared to be public highways. Public highways are of two types:
(1) State highways, which are those lands, interests, or other real property rights, as defined above, having an alignment or possession of a real property highway related interest as established by law, subdivided and acquired in accordance with policies and procedures of the department of transportation, separate and exempt from any county subdivision ordinances, and all those under the jurisdiction of the department of transportation; and
(2) County highways, which are all other public highways.
(Emphasis added).

The section of Kamehameha Highway where Officer Hayakawa observed Davis and his pickup truck was located within the stretch of Kamehameha Highway that intersects with Kuala Street. This portion of the street is designated as a "public way" because it falls within the above description set forth in Schedule VII.

A court must take judicial notice of, inter alia, the constitutions and statutes of the United States and of every state and all duly enacted ordinances of cities or counties of the State of Hawai'i. HRE Rule 202(b) (1993). This court has held that "courts are dutybound to take 'judicial notice' of municipal ordinances." *State v. West*, 95 Hawai'i 22, 26, 18 P.3d 884, 888 (2001); *State v. Schnabel*, 127 Hawai'i 432, 444, 279 P.3d 1237, 1249 (2012) ("it is universally accepted that a court must judicially notice the public law of its own jurisdiction" (quotation marks and citation omitted)). Judicial notice may be taken at any stage of the proceeding. HRE Rule 201(f) (1993). Accordingly, pursuant to *West* and *Schnabel*, judicial notice is taken of the fact that the section of Kamehameha Highway where the incident occurred in this case was on a "public highway" pursuant to ROH § 15–7.2 and HRS § 291E–1. Therefore, sufficient evidence was adduced to prove that Davis operated his vehicle on a "public way."

■ Second, Davis argues that the State failed to establish that Exhibit 1 relating to the conviction for "Terry Jay Davis" was applicable to Davis, who was identified as "Terry J. Davis" in the July 22, 2011 citation issued by Officer Hayakawa. Thus, it is contended that there was insufficient evidence to identify Davis as the person convicted in the Judgment of Conviction.

A "[p]rior conviction may be proved by any evidence ... made in connection with arrest, conviction, or imprisonment that reasonably satisfies the court that the defendant was convicted." HRS § 706–666(2) (1993). In *State v. Nishi*, the ICA held that the information contained in a certified traffic abstract, which includes the person's name, social security number, and birth date, "is adequate to connect a defendant with a prior conviction." 9 Haw.App. 516, 527, 852 P.2d 476, 482 (1993), reconsideration

granted, 9 Haw.App. 660, 853 P.2d 543 (1993). However, in that case, "[t]he State presented no evidence of Defendant's driver's license number or social security number or birth date that could be compared with information appearing on the traffic abstract." *Nishi*, 9 Haw.App. at 528, 852 P.2d at 482. Accordingly, the court held that the defendant had been erroneously sentenced as a second-time offender because the prosecution failed to submit any evidence beyond an identical name, connecting the defendant to the previously convicted individual. *Id.*, 9 Haw.App. at 528, 852 P.2d at 482–83.

Here, the Judgment of Conviction of "Terry Jay Davis" included the final four digits of Davis's social security number and Davis's date of birth. Officer Hayakawa testified that he obtained Davis's social security number and date of birth from Davis. The citation issued to "Terry J. Davis" by Officer Hayakawa on July 22, 2011 indicated Davis's date of birth, and the last four digits of his social security number. This information matched the information recorded on the Judgment of Conviction, which provided the requisite proof tying the defendant to the previously convicted individual.[20] *See id.*, 9 Haw.App. at 528, 852 P.2d at 482.

■ Third, Davis contends that the State failed to adduce substantial evidence to establish that he was on probation on July 22, 2011, and his driver's license was restricted at the time of the motor vehicle collision on July 22, 2011.

HRS § 291E–61.5(d)(2)(A) provides that whenever probation is imposed pursuant to a conviction under this statute, the probation term is five years with conditions to include a "[m]andatory revocation of license and privilege to operate a vehicle for a period not less than one year but not more than five years."

The Judgment of Conviction sentenced Davis to five years of probation as to Count 1, habitually operating a vehicle under the influence of an intoxicant (HRS § 291E–61.5). Special Condition 7R provided that Davis was "[p]rohibited from operating a motor vehicle throughout the period of probation." The five-year term of probation was imposed on March 19, 2007, and therefore probation would expire on March 18, 2012.

---

**20.** Additionally, "J." and "Jay" appear to be in-     terchangeable variations.

Davis was found to have operated his truck on July 22, 2011.

Accordingly, the State produced substantial evidence to show that Davis was on probation on July 22, 2011, and his driver's license was restricted at the time of the motor vehicle collision on July 22, 2011, based upon his conviction for violation of HRS § 291E–61.5.

■ Davis further asserts that even if the terms and conditions of his probation restricting his driver's license were in effect on July 22, 2011, the State failed to adduce "any evidence from the driver's license bureau or from the Administrative Driver's License Revocation Office," that he was aware that his license was restricted. Thus, without further evidence, Davis argues that Exhibit 1 was insufficient to establish that he "intentionally, knowingly, or recklessly" operated a vehicle while his driver's license was revoked or suspended on July 22, 2011.

The Judgment of Conviction specifically stated, "This judgment has been entered and copies mailed or delivered to all." Additionally, a defendant is required to be present for imposition of sentence for a felony offense under HRPP Rule 43. The record thus contained substantial evidence that Davis was aware that he was prohibited from operating a motor vehicle throughout the period of probation. Accordingly, the State produced sufficient evidence to establish that Davis intentionally, knowingly, or recklessly operated a vehicle on July 22, 2011, while his driver's license was revoked or suspended.

## D.

■ In his fourth question presented, Davis contends that the ICA gravely erred in failing to hold that double jeopardy precluded another trial despite *Nesmith*. However, in light of our determination that the State adduced substantial evidence to support a conviction under HRS §§ 291E–62(a)(1) and (2), double jeopardy does not preclude a retrial on the charge.

## IV.

In conclusion, we hold that where a defendant expressly claims both a charging error and insufficient evidence to support the conviction, the reviewing court is required under article I, section 10 of the Hawaiʻi Constitution to examine the sufficiency of the evidence claim before vacating the conviction and remanding for a new trial based on the charging error. In this case, we conclude that the State did adduce substantial evidence to support the district court judgment. Accordingly, we affirm the ICA's September 10, 2013 Judgment on Appeal, but for the reasons stated.

Concurring Opinion by ACOBA, J.

The majority opinion indicates there are two possible approaches to resolving on appeal claims that the insufficiency of the evidence at trial precludes a retrial based on the double jeopardy clause. First, appellate courts may review sufficiency of the evidence questions under the double jeopardy clause of article 1, section 10 of the Hawaiʻi Constitution if expressly raised by a party.[1] *See* majority opinion at 45. Second, appellate courts may review sufficiency of the evidence questions "as a matter of prudent policy." Majority opinion at 50. I read the majority opinion to clarify that challenges to the sufficiency of the evidence must be expressly raised by a party in order to invoke review under the double jeopardy clause.[2]

---

1. Article 1, Section 10 of the Hawaiʻi Constitution provides in relevant part as follows:

   No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury or upon a finding of probable cause after a preliminary hearing held as provided by law or upon information in writing signed by a legal prosecuting officer under conditions and in accordance with procedures that the legislature may provide, except in cases arising in the armed forces when in actual service in time of war or public danger; <u>nor shall any person be subject for the same offense to be twice put in jeopardy;</u> nor shall any person be compelled in any criminal case to be a witness against oneself. (Emphasis added.)

2. It has been held that the failure of a charge to state an offense renders the charge jurisdictionally defective and leaves the court without subject matter jurisdiction to decide the merits of the case. *See State v. Walker*, 126 Hawaiʻi 475, 492, 273 P.3d 1161, 1178 (2012) (holding that a Ha-

bitually Operating a Vehicle Under the Influence charge was defective because it did not allege that the defendant had three prior convictions for Operating a Vehicle Under the Influence in the last ten years, and therefore remanding the case with instructions to dismiss without prejudice). It is axiomatic that if "a lower court is found to have lacked jurisdiction, we have jurisdiction [ ] on appeal, not of the merits, but for the purpose of correcting an error in jurisdiction." *In re Rice*, 68 Haw. 334, 335, 713 P.2d 426, 427 (1986) (emphasis added). If an insufficient charge constituted a jurisdictional defect, then this court could not evaluate whether sufficient evidence existed before the trial court inasmuch as it would not have jurisdiction over the merits of the case.